

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**
717 MADISON PLACE, N.W.
WASHINGTON, D.C. 20439

PETER R. MARKSTEINER
CLERK OF COURT

CLERK'S OFFICE
202-275-8000

FILED BY_____vk_____D.C.

Jun 18, 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

June 18, 2020

United States District Court for the Southern District of Florida
Wilkie D. Ferguson, Jr. United States Courthouse
400 North Miami Avenue
Miami, FL 33128

**Re:   Merit Systems Protection Board, AT-0752-19-0427-I-1**
**Harris v. Interior, 20-1522**

Dear Clerk:

On June 18, 2020, the United States Court of Appeals for the Federal Circuit issued an order transferring this case to your court. Attached is a copy of the order, public docket sheet, and publicly available documents.

Please contact the Clerk's Office at the number above if you need further information regarding this case.

Very truly yours,

/s/ Peter R. Marksteiner
Peter R. Marksteiner
Clerk of Court

By: J. Liporace, Deputy Clerk

NOTE: This order is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

———————————

**DELTA DANIELLE HARRIS,**
*Petitioner*

**v.**

**DEPARTMENT OF THE INTERIOR,**
*Respondent*

———————————

2020-1522

———————————

Petition for review of the Merit Systems Protection Board in No. AT-0752-19-0427-I-1.

———————————

PER CURIAM.

## O R D E R

Delta Danielle Harris has filed a petition for review from a final decision of the Merit Systems Protection Board. She responds to this court's April 21, 2020 order confirming that she intends to pursue her discrimination claims and urging transfer to the United States District Court for the Southern District of Florida. The Department of the Interior responds, urging dismissal.

While the Department contends that 5 U.S.C. § 7702(a)(3)(B) precludes transfer, from the limited record before the court, it is unclear that Ms. Harris has

2                                            HARRIS v. INTERIOR

petitioned the Equal Employment Opportunity Commis-
sion to review the Board decision here.[*]  The court deems
it the better course to transfer, leaving it to the Southern
District of Florida to decide whether any pending EEOC
matter impacts its jurisdiction.

Accordingly,

IT IS ORDERED THAT:

The stay is lifted, and pursuant to 28 U.S.C. § 1631,
this case and all transmittals are transferred to the United
States District Court for the Southern District of Florida.

FOR THE COURT

<u>June 18, 2020</u>        /s/ Peter R. Marksteiner
Date                          Peter R. Marksteiner
                              Clerk of Court

s31

_____

[*] While Ms. Harris notes that she has pursued an
EEOC claim, it appears that she may be referring to the
claim she filed with the Department separate from the un-
derlying Board proceedings.

Case 2:20-cv-04495-RLR    Document 1    Entered on FLSD Docket 06/29/2020    Page 4 of 120    (4 of 120)

**General Docket**

**United States Court of Appeals for the Federal Circuit**

| | |
|---|---|
| **Court of Appeals Docket #:** 20−1522 | **Docketed:** 03/03/2020 |

Harris v. Interior
**Appeal From:** Merit Systems Protection Board
**Fee Status:** fee due

**Case Type Information:**
   **1)** Agency
   **2)** Board
   **3)** –

**Originating Court Information:**
   **District:** MSPB−1 : AT−0752−19−0427−I−1
   **Date Rec'd COA:**
   02/21/2020

**Prior Cases:**
   None

**Current Cases:**
   None

DELTA DANIELLE HARRIS
      Petitioner

Delta Danielle Harris, −
Direct: 772−501−9838
Email: deltaharris7@gmail.com
[NTC Pro Se]
405 Autumn Terrace
Sebastian, FL 32958

v.

DEPARTMENT OF THE INTERIOR
      Respondent

Borislav Kushnir
Direct: 202−307−5928
Email: Steven.Kushnir@usdoj.gov
[LD NTC Government]
Department of Justice
Civil Division
PO Box 480
Ben Franklin Station
Washington, DC 20044

DELTA DANIELLE HARRIS,

     Petitioner

v.

DEPARTMENT OF THE INTERIOR,

     Respondent

| 03/03/2020 | 1 | Appeal docketed. Received: 02/21/2020. [675724]<br>Fee/IFP is due on 03/17/2020. 15(c) is due on 03/17/2020. Entry of Appearance is due 03/17/2020. Certified List is due on 04/13/2020. [JAL] [Entered: 03/03/2020 09:33 AM] |
|---|---|---|
| 03/09/2020 | 2 | MODIFIED ENTRY: MOTION of Petitioner Delta Danielle Harris for leave to proceed in Forma Pauperis. Service: 03/09/2020 by clerk. [677477]––[Edited 03/12/2020 by JAL] [JCP] [Entered: 03/10/2020 09:30 AM] |
| 03/11/2020 | 3 | Certified list received. Service: 03/03/2020 by US mail. Refer to Fed. Cir. R. 31 for calculating brief deadlines from service of the certified list. [677834] [LMN] [Entered: 03/11/2020 11:46 AM] |
| 03/12/2020 | 4 | MODIFIED ENTRY: MOTION of Petitioner Delta Danielle Harris to extend the time to file the Informal Opening Brief and to extend the time to file the Statement Concerning Discrimination [Consent: not addressed]. Service: 03/12/2020 by clerk. [678464]––[Edited 03/16/2020 by JAL] [JCP] [Entered: 03/13/2020 09:29 AM] |
| 03/17/2020 | 5 | MODIFIED ENTRY: MOTION of Petitioner Delta Danielle Harris to extend the time to file the Informal Opening Brief and to extend the time to file the Statement Concerning Discrimination [Consent: not addressed]. Service: 03/17/2020 by email. [679539]––[Edited 03/18/2020 by JAL] [JCP] [Entered: 03/17/2020 03:33 PM] |
| 03/18/2020 | 6 | ORDER granting motion to extend time [4] [5] to the extent that Ms. Harris's Statement Concerning Discrimination and her informal opening brief are due no later than April 30, 2020. Service as of this date by the Clerk of Court. [679711] [LMS] [Entered: 03/18/2020 09:49 AM] |
| 03/20/2020 | 7 | Entry of appearance for Borislav Kushnir as principal counsel for Respondent Interior. Service: 03/20/2020 by email, US mail. [680392] [20–1522] [Borislav Kushnir] [Entered: 03/20/2020 09:22 AM] |
| 03/23/2020 | 8 | MODIFIED ENTRY: Statement Concerning Discrimination pursuant to Fed. Cir. R. 15(c) for Petitioner Delta Danielle Harris. Service: 03/26/2020 by clerk. [681925]––[Edited 03/27/2020 by JAL] [JCP] [Entered: 03/26/2020 10:22 AM] |
| 04/08/2020 | 9 | MODIFIED ENTRY: MOTION of Petitioner Delta Danielle Harris to supplement the record [Consent: not addressed]. Service: 04/08/2020 by email. [685446]––[Edited 04/09/2020 by JAL] [JCP] [Entered: 04/09/2020 08:03 AM] |
| 04/08/2020 | 10 | MODIFIED ENTRY: MOTION of Petitioner Delta Danielle Harris to Submit Documents from the MSPB Listed Index [Consent: not addressed]. Service: 04/08/2020 by email. [685448]––[Edited 04/09/2020 by JAL] [JCP] [Entered: 04/09/2020 08:04 AM] |
| 04/13/2020 | 11 | MODIFIED ENTRY: MOTION of Petitioner Delta Danielle Harris to supplement the record [Consent: not addressed]. Service: 04/13/2020 by email. [686453]––[Edited 04/14/2020 by JAL] [JCP] [Entered: 04/13/2020 03:06 PM] |
| 04/21/2020 | 12 | ORDER filed directing the parties, within 30 days from the filing of this order, to show cause why this case should not be transferred to a United States district court, and which court would be most appropriate. The briefing schedule is stayed. (Per Curiam). Service as of this date by the Clerk of Court. [688756] [LMS] [Entered: 04/21/2020 01:52 PM] |
| 04/28/2020 | 13 | MODIFIED ENTRY: RESPONSE of Petitioner Delta Danielle Harris to the court order to show cause [12]. Service: 04/28/2020 by email. [690458]––[Edited 04/28/2020 by JAL] [JCP] [Entered: 04/28/2020 10:24 AM] |
| 05/19/2020 | 14 | RESPONSE of Respondent Interior to the court order to show cause [12] , court order [12]. Service: 05/19/2020 by US mail, email. [695540] [20–1522] [Borislav Kushnir] [Entered: 05/19/2020 09:05 AM] |

| 05/22/2020 | 15 | MODIFIED ENTRY: REPLY of Petitioner Delta Danielle Harris to response [14]. Service: 05/22/2020 by email. [696669]--[Edited 05/27/2020 by JAL] [JCP] [Entered: 05/22/2020 04:05 PM] |
|---|---|---|
| 06/18/2020 | 16 | ORDER filed. The stay is lifted, and pursuant to 28 U.S.C. § 1631, this case and all transmittals [2] [9] [11] [10] are transferred to the United States District Court for the Southern District of Florida. (Per Curiam). Service as of this date by the Clerk of Court. [702086] [NL] [Entered: 06/18/2020 10:19 AM] |



**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**
717 MADISON PLACE, N.W.
WASHINGTON, D.C. 20439

PETER R. MARKSTEINER
CLERK OF COURT

CLERK'S OFFICE
202-275-8000

March 3, 2020

### NOTICE OF DOCKETING

**Federal Circuit Docket No.:** 2020-1522

**Federal Circuit Short Title:** Harris v. Interior

**Date of Docketing:** March 3, 2020

**Originating Tribunal:** Merit Systems Protection Board

**Originating Case No.:** AT-0752-19-0427-I-1

**Petitioner:** Delta Danielle Harris

A petition for review has been filed and assigned the above Federal Circuit case number. The court's official caption is included as an attachment to this notice. Unless otherwise noted in the court's rules, the assigned docket number and official caption or short title must be included on all documents filed with this Court. It is the responsibility of all parties to review the Rules for critical due dates. The assigned deputy clerk is noted below and all case questions should be directed to the Case Management Team at (202) 275-8055.

**CERTIFIED LIST:** The agency or arbitrator is directed to forward the certified list as promptly as possible but no later than 40 days from the date of this notice.

The following documents are due within 14 days of this notice:

- Entry of Appearance. (Fed. Cir. R. 47.3.)
- Certificate of Interest. (Fed. Cir. R. 47.4.)
- Docketing Statement. Note: The Docketing Statement is due in 30 days if the United States or its officer or agency is a party in the appeal. (Fed. Cir. R. 33.1 and the Mediation Guidelines)
- Statement Concerning Discrimination in MSPB cases. (Fed. Cir. R. 15(c).)

**PARTY FILING AND CONTACT INFORMATION:** Each counsel representing a party must be a member of the court's bar and registered for the court's electronic filing system. Fed. Cir. R. 25(a). Attorneys whose contact information has changed should make all changes through their PACER service center profile.

Unrepresented parties must submit documents intended for filing to the court in paper. However, motions and letters may be emailed to prose@cafc.uscourts.gov or faxed to 202-275-9678. Unrepresented parties changing contact information must submit a letter or updated Entry of Appearance with the new contact information.

**OFFICIAL CAPTION:** The court's official caption is attached and reflects the lower tribunal's caption pursuant to Fed. R. App. P. 12(a), 15(a), and 21(a). Please review the caption carefully and promptly advise this court in writing of any improper or inaccurate designations.

/s/ Peter R. Marksteiner

Peter R. Marksteiner

Clerk of Court

By: J. Liporace, Deputy Clerk

**Attachments:**

- Official caption
- Paper Copies of General Information and Forms (to unrepresented parties only):
    - General Information and Overview of a Case in the Federal Circuit
    - Entry of Appearance
    - Informal Brief
    - Motion and Affidavit for Leave to Proceed in Forma Pauperis (only to filers owing the docketing fee)
    - Supplemental in Forma Pauperis Form for Prisoners (only to filers in a correctional institution)
    - Statement Concerning Discrimination

**cc:** Merit Systems Protection Board

**Official Caption**


**DELTA DANIELLE HARRIS,**
*Petitioner*


v.


**DEPARTMENT OF THE INTERIOR,**
*Respondent*


**Short Caption**

Harris v. Interior

Case 2:20-cv-14155-RLR Document 1-1 Entered on FLSD Docket 04/24/2020 Page 12 of 120

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Delta Harris
_____,   Petitioner or Appellant,


v.   **PETITION FOR REVIEW**


MSPB
_____,   Respondent or Appellee.

RECEIVED

FEB 21 2020

United States Court of Appeals
For The Federal Circuit


Delta HArris
_____   (name all parties* bringing the petition or appeal)

hereby petition/appeal the court for review of the   MSPB final  decision AT-0752-19-0427-I-1   (describe

the order or decision and include decision number) of the   MSPB on DOI FWS TERMINATION DECISOIN

(name the agency, board, office or bureau) entered on   November 23, 2019   (date).

The order or decision was received on   November 18, 2019   (date).


Date: February 19. 2020
_____

_____
(Signature of petitioner, appellant
or attorney)


Delta Harris 405 Autumn Terrace

Sebastien, Fl 32958 772-501-9838

Deltaharris7@gmail.com

(Address, phone number and e-mail of petitioner, appellant or attorney)

*See Fed. R. App. P. 15 (a) (2) for permissible ways of identifying petitioners.

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
### ATLANTA REGIONAL OFFICE

DELTA DANIELLE HARRIS,
  Appellant,

DOCKET NUMBER
AT-0752-19-0427-I-1

v.

DEPARTMENT OF THE INTERIOR,
  Agency.

DATE: November 18, 2019

RECEIVED

FEB 21 2020

United States Court of Appeals
For The Federal Circuit

Delta Danielle Harris, Sebastian, Florida, pro se.

Cecelia Townes, Esquire, Atlanta, Georgia, for the agency.

### BEFORE
Silvia de la Cruz
Administrative Judge

## INITIAL DECISION

On April 17, 2019, Delta D. Harris filed an appeal with the U.S. Merit Systems Protection Board challenging her removal from the position of Fish and Wildlife Biologist, with the Department of the Interior, Fish and Wildlife Service, in Vero Beach, Florida. The Board has jurisdiction over this appeal pursuant to 5 U.S.C. §§ 7511(a)(1), 7512(1), and 7513(d).

Because the appellant withdrew her request for a hearing, this decision is based on the written record. For the reasons set forth below, the agency's action is AFFIRMED.

analysis and findings

## Background

Prior to her removal, the appellant held the position of Fish and Wildlife Biologist, GS-0401-11, in the South Florida Ecological Services Office (SFESO), in Vero Beach, Florida. Appeal File (AF), Tab 11 at 5 and Tab 12 at 213-219. In addition to "biologist," the appellant also held the role of SFESO's National

2

Resource Conservation Service (NRCS) Liaison. AF, Tab 12 at 205. In this capacity, she attended the NRCS National and Regional workshops when she was available and the NRCS's annual Wetland Reserve Easement Workshop. *Id.*

In early August of 2017, the appellant received an email with details of the 2017 NRCS workshop. *Id.* at 130-34. The workshop was to be held in Naples, Florida, from October 25-27, 2017, and included discussions about wetlands conservation as well as time in the field. *Id.* On Friday, August 4, 2017, the appellant sent several emails to other biologists in her office with her supervisor, Timothy Breen, copied on the emails, stating her intention to attend the workshop and her plans to make hotel reservations for the group. *Id.* The appellant also planned to give a presentation to workshop attendees. AF, Tab 11 at 11 and Tab 12 at 117.

At this point in the fall of 2017, the appellant had a Leave Restriction in place as a result of past absences and inconsistent attendance. AF, Tab 12 at 69-71. This restriction required the appellant to notify Breen and get his approval prior to taking any scheduled leave. *Id.* For unscheduled annual leave, the appellant had to notify Breen and provide written proof of an emergency within two hours after her shift was scheduled to begin. *Id.* For unscheduled sick leave, the appellant was required to notify Breen within one hour after her shift was scheduled to begin and then provide a doctor's note upon her return. *Id.* Noncompliance with the Leave Restriction meant the appellant risked her absences being recorded as Absent Without Leave (AWOL). *Id.* These restrictions were placed on the appellant effective May 19, 2017, through May 19, 2018.[1] *Id.* The appellant signed that document acknowledging her receipt on May 19, 2017. *Id.*

---

1 The appellant's Leave Restriction dated May 19, 2017 was an extension of her original Leave Restriction, dated November 25, 2015, which was incrementally extended several times in the intervening months. AF, Tab 12 at 69-80.

On October 24, 2017, the appellant checked out a government-owned vehicle for seven days for the "NRCS Workshop." *Id.* at 136. However, the appellant did not attend the workshop on October 25-27, 2017. *Id.* at 118-19 and Tab 11 at 11. Nevertheless, on November 13, 2017, she submitted a voucher for $273.25, constituting expenses she incurred from attending "NRCS Fort Myers"[2] on October 25-27, 2017. AF, Tab 12 at 110-115.

On March 16, 2018, the agency notified the appellant that it was proposing her removal for AWOL, failure to follow leave procedures, lack of candor, misuse of a government-owned vehicle (GOV), and inappropriate conduct. AF, Tab 12 at 5-15. Appellant provided a written response on April 6, 2018. AF, Tab 11 at 9-57. After considering the appellant's written response and relevant *Douglas* factors, Donald (Bob) Progulske, Everglades Program Supervisor, issued a decision sustaining all charges and finding the penalty of removal to be adequate and appropriate. AF, Tab 11 at 5-7. The appellant's removal was effective April 20, 2018, and on April 17, 2019, she filed the instant appeal.[3] AF, Tab 1 and Tab 11 at 5-7.

Standard of Review

In an appeal in which a Federal agency takes an adverse action against a tenured employee, the Board will sustain the action if the charges are supported by a preponderance of the evidence.[4] 5 U.S.C. § 7701(c)(1)(B). In addition, the agency must show that its action promotes the efficiency of the service and that

2 The workshop was held in Naples, Florida, but the hotel the appellant reserved was in Fort Myers, Florida. AF, Tab 12 at 113.

3 On May 7, 2018, the appellant initiated an Equal Employment Opportunity (EEO) complaint alleging discrimination based on her physical and mental disabilities and retaliation for prior EEO activity. AF, Tab 10 at 28-41. On May 14, 2019, the agency issued a Final Agency Decision finding that the appellant had not been subjected to unlawful employment discrimination. *Id.*

4

the imposed penalty is reasonable. *Vaughn v. United States Postal Service*, 109 M.S.P.R. 469, ¶ 13 (2008).

The agency proved its charge of absent without leave (AWOL) by a preponderance of the evidence (Charge 1).

**Specifications 1-3**

In the first charge, the agency charged the appellant with AWOL when she failed to attend each day of the NRCS Workshop on October 25-27, 2017, without submitting a leave request or getting the absences approved by Breen.[5] AF, Tab 12 at 5-6. In order for an agency to prove AWOL, the agency must show that (1) the employee was absent, and that (2) her absence was not authorized, or that her request for leave was properly denied. *Wesley v. U.S. Postal Service*, 94 M.S.P.R. 277, ¶ 14 (2003). An agency is required to prove only the essence of its charge. It need not prove each factual specification supporting the charge. *Hicks v. Department of the Treasury*, 62 M.S.P.R. 71, 74 (1994), *aff'd*, 48 F.3d 1235 (Fed. Cir. 1995) (Table). While an agency has broad discretion in approving or denying a request for annual leave, it is not wholly unfettered in doing so. *Benally v. Department of Interior*, 71 M.S.P.R. 537 (1996).

The record shows that on October 31, 2017, Breen contacted Joe Prenger, State Coordinator, Partners for Fish and Wildlife Program, to ask about the appellant's presentation at the workshop. AF, Tab 12 at 117. Prenger informed Breen that the appellant had not been present at the workshop and he had given the presentation in her place. *Id.* at 117 and 121. Two other attendees, Tim Towles

—————————————

4 A preponderance of the evidence is that degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

5 Specification 1 deals with October 25, 2017, specification 2 with October 26, 2017, and specification 3 with October 27, 2017. AF, Tab 12 at 5-6.

and Oliver Van Den Ende, Restoration Coordinator, Everglades Headwaters National Wildlife Refuge Complex, confirmed to Breen that the appellant was not present for any of the three days of the workshop. *Id.* at 117 and 120. On November 9, 2017, Breen contacted Crenel Francis, the NRCS Florida Easement Program Coordinator, who planned the workshop. Francis verified that the appellant was not in attendance but that she had told Francis she was having a health issue. *Id.* at 117. Breen's notes indicated that the appellant did not contact him according to her Leave Restriction to tell him prior to the workshop that she would not be present and to request leave. *Id.* She also did not call him on any of the days of the workshop to alert him of an illness that would have prevented her from attending. *Id.*

In her written response to the proposed removal, the appellant admitted that she did not attend the workshop. AF, Tab 11 at 11-12. However, she asserted that she never contacted Breen regarding her absence from the workshop due to her fear for her job, fear of consequences, and her own carelessness. *Id.* She also alleged that Breen knew of the possibility that she might not attend the workshop, pending the confirmation of the date of a medical procedure. *Id.* The appellant asserted that she was conducting government business each day that she was charged with AWOL because she attempted to drive to the workshop but had to turn around because she was "full of anxiety and depression." *Id.* at 14. The appellant provided copies of text messages between her and Jessica Robbins, an NRCS engineer who was also a friend, where she alerted her of her intention to make it to the workshop and her subsequent absences. *Id.* at 38-41. In her close of record brief, she argued that between October 23 and October 30, 2017, she was "excused from work for the reason that she was incapacitated." AF, Tab 23 at 10 and 17.

It is undisputed that the appellant did not attend the workshop on the specified dates, and the evidence showed that her absences were not authorized. The appellant's arguments that she was incapacitated and so was excused from

6

work on the days of the workshop fall flat; the Board has found that an appellant should explain "how any of her alleged ailments prevented her from attending her scheduled training on the dates in question, *or how any medical condition accounted for her failure to contact her supervisor . . .* to request leave." *Sherlock v. General Services Admin.*, 103 M.S.P.R. 352, 358 (2006) (emphasis added). The appellant failed to notify Breen regarding her absences from the workshop and did not explain why her anxiety made her unable to contact him, especially when she was able to contact her friend Robbins. I find that the appellant engaged in the conduct as described in specifications one through three. The specifications are sustained.

### Specification 4

In specification 4, the agency charged the appellant with AWOL when she was absent from her duty station at SFESO on November 6, 2017, from 8:00 a.m. to 11:00 a.m. without having her absence approved by Breen. AF, Tab 12 at 6.

According to a November 14, 2017, notice from Breen to the appellant, the appellant was absent from work on November 6, 2017, from the beginning of her tour of duty until approximately 11:00 a.m. AF, Tab 19 at 69. This memo described the appellant's understanding that she was out of annual leave at the time and that the time would be coded as AWOL. *Id.* The appellant does not address this specification in her filings and the extensive time sheets she provided cover only the period of time from February 22, 2015, to October 14, 2017. AF, Tab 25 at 104-313.

Because the appellant did not dispute that she was absent on November 6, 2017, from 8:00 a.m. to 11:00 a.m. and because she did not show that her absence was authorized, I find that the agency established that the appellant was absent without leave. Specification 4 is sustained.

Charge 1 is SUSTAINED.

<u>The agency proved its charge of failure to follow leave procedures by a preponderance of the evidence (Charge 2).</u>

***Specifications 1-7***

>    The second charge is supported by seven specifications:
>
>    **Specification 1**: On December 28, 2017, you did not notify me until 9:50 a.m. that you would be late arriving at work. In addition, your absence from work from 8:00 a.m. to 9:50 a.m. had not been approved in advance.
>
>    **Specification 2**: On January 18, 2018, you reported to work at 10:00 a.m. without any notification of your expected late arrival. In addition, your absence from 8:00 a.m. to 10:00 a.m. had not been approved in advance.
>
>    **Specification 3**: On February 5, 2018, you did not notify me until 9:45 a.m. that you would not be reporting to work that day. In addition, your absence from work from 8:00 a.m. to 9:45 a.m. had not been approved in advance.
>
>    **Specification 4**: On February 7, 2018, you did not notify me until 12:15 p.m. that you would be taking leave for the entire day. In addition, your absence from 8:00 a.m. to 12:15 p.m. had not been approved in advance.
>
>    **Specification 5**: On February 9, 2018, you did not notify me until 9:07 a.m. that you would not be reporting to work that day. In addition, your absence from 8:00 a.m. to 9:07 a.m. had not been approved in advance.
>
>    **Specification 6**: On February 21, 2018, you did not notify me until 9:16 a.m. that you would be reporting to work late. In addition, your absence from 8:00 a.m. to 9:45 a.m. had not been approved in advance.
>
>    **Specification 7**: On February 28, 2018, you did not notify me until 9:17 a.m. that you would not be reporting to work. In addition, your absence from 8:00 a.m. to 9:17 a.m. had not been approved in advance.

AF, Tab 12 at 6-7. In order to prove a charge of failure to follow leave requesting procedures, the agency must show that it placed the appellant on notice of the requirements for requesting leave, it informed her that she could be disciplined if

8

she failed to comply with these requirements, and the appellant failed to comply. *See Abbott v. U.S. Postal Service*, 121 M.S.P.R. 294, ¶ 10 (2014).

As previously described, the appellant was on notice she had been placed on Leave Restriction as a result of past absences and inconsistent attendance. AF, Tab 12 at 69-71. These restrictions were to remain in place until May 19, 2018, and required the appellant to notify her supervisor of any absences to get his approval. *Id.*

In response to this charge, the appellant provided payroll sheets and copies of Quicktime records that indicated she used Leave Share time, Leave Without Pay, and Sick Time on the dates listed in the specifications. AF, Tab 39 at 14-23, 25. She stated that these documents directly refute Charge 2 because the time sheets prove that she was not AWOL on those dates. *Id.* at 4. Additionally, the appellant provided an index of the doctor's notes she stated she received to excuse her from work. AF, Tab 36 at 21-28. Of the dates included in the specifications for this charge, only December 28, 2017 (Specification 1), was mentioned in this index. *Id.* at 27-28. The appellant had a doctor's note dated December 28, 2017, reading: "Excuse her from 12-26.27.28-2017." AF, Tab 25 at 44. The appellant did not say when or if she provided that December 28, 2017, medical excuse to Breen in a timely manner pursuant to the Leave Restriction. AF, Tab 36 at 27-28. She did not provide medical excuses for the dates listed in specifications two through seven. *Id.*

In support of the charge, the agency provided Breen's notes on the appellant's tardiness and absences. AF, Tab 22 at 44-82. Breen noted that on December 28, 2017, he had had "[n]o communication from Delta...not in office" as of 9:00 a.m. *Id.* at 78. He noted that he received an email at 9:50 a.m. from Delta that she did not feel well and that she then arrived at 10:45 a.m. *Id.* Breen also noted that on January 18, February 5, February 7, February 9, February 21, and February 28, 2018, the appellant was late to work with no notice or missed work with late notice, as described in the specifications. *Id.* at 79-80.

I find that the appellant's submission of the Quicktime documentation showing approval of Leave Share, Sick Time, and LWOP on the dates listed in this charge is irrelevant to the determination of whether the charge should be sustained. The appellant mischaracterized Charge 2 as a charge of AWOL on those dates; it is not. AF, Tab 39 at 4. Charge 2 is a charge of failure to follow leave procedures and the time sheets she provided have no details regarding when or if the appellant notified her supervisor that she would be absent, as she was required to do pursuant to her Leave Restriction. AF, Tab 12 at 6-7. They also do not indicate when the Leave Share, Sick Time, and LWOP were approved. Thus, I find that this evidence does not directly relate to Charge 2.

In this appeal, I find the agency's evidence outweighs the appellant's evidence. Breen's signed declaration attests to the appellant's habit of being late to the office without requesting leave as required per the Leave Restriction. AF, Tab 22 at 41-82. He noted his commitment to keeping track of the appellant's absences and excuses and his initial belief that the appellant's tardiness and absences were a temporary problem, and the supporting documentation is consistent with his account. *Id.* The extensive records show when the appellant was not in the office, what excuse she provided (when one was provided), how she notified Breen (including what specific email address was used), and whether he received a doctor's excuse or was told one would be forthcoming. *Id.* These records indicate that Breen was dedicated to ensuring accuracy in his supervision of the appellant. The numerous medical excuses the appellant provided to Breen over several years which both individuals documented demonstrate that the appellant knew how to request leave and how to get the medical documentation to her supervisor in an appropriate manner. *Id.*; AF, Tab 24 at 54-70 and Tab 25 at 9-45 and 64-68. Further, Breen's statement that he wanted to help the appellant is corroborated by his repeated assurances that the Leave Restriction could be lifted if the appellant reliably and consistently attended work and followed procedures. AF, Tab 22 at 41 and Tab 12 at 76-80.

In contrast, the appellant was on notice that a deficiency in providing an appropriate excuse pursuant to her Leave Restriction could result in discipline, as she had been disciplined for similar issues before. AF, Tab 12 at 96-103 and 175-82. In failing to respond to the actual details of this charge (Failure to Follow Leave Procedures instead of AWOL) with a signed affidavit, the appellant has not provided any evidence contradicting the agency's evidence against her. In sum, I do not find that the appellant provided a satisfactory excuse to Breen for any of dates described in the specifications and she therefore did not follow the procedures she was required to under her Leave Restriction. I find that the agency established by a preponderance of the evidence that the appellant failed to follow leave procedures. Specifications 1 through 7 are sustained.

Charge 2 is sustained.

## The agency proved its charge of lack of candor by a preponderance of the evidence (Charge 3).

### *Specification 1*

According to the notice of proposed removal, the appellant lacked candor when she presented herself as having travelled to and attended the workshop when she did not. AF, Tab 12 at 7-8. The Federal Circuit has stated that "[l]ack of candor and falsification are different, although related, forms of misconduct, and the latter is not a necessary element of the former." *Ludlum v. Department of Justice*, 278 F.3d 1280, 1283-84 (Fed. Cir. 2002). To establish falsification, an agency needs to show that the employee made an affirmative misrepresentation and prove intent to deceive. Conversely, lack of candor "is a broader and more flexible concept." *Id.* "Although lack of candor necessarily involves an element of deception, 'intent to deceive' is not a separate element of that offense as it is for 'falsification.'" *Id.* at 1284-85. The agency must produce some evidence that the appellant's actions, under the circumstances, involved an "element of deception." Id. at 1284. In *Rhee v. Department of the Treasury*, 117 M.S.P.R. 640,

11

¶ 11 (2012), overruled in part on other grounds by *Savage v. Department of the Army*, 122 M.S.P.R. 612 (2015), a case in which the appellant was charged with lack of candor for making an incorrect statement to her supervisor, the Board found that, to establish the "element of deception," the agency had to prove that the appellant knowingly made an incorrect statement. Because the agency failed to establish by preponderant evidence that the appellant knew her statement was false, the Board found the administrative judge was correct in not sustaining the charge. *Id.*, ¶¶ 12–6. Subsequently, the Board held that lack of candor requires proof of the following elements: (1) that the employee gave incorrect or incomplete information; and (2) that she did so knowingly. *Fargnoli v. Department of Commerce*, 123 M.S.P.R. 330, ¶ 17 (2016).

Specification 1 charged the appellant with submitting a travel voucher for reimbursement of expenses incurred to travel to the workshop, although the appellant had not attended. AF, Tab 12 at 7-8. It also charged the appellant with telling Breen that she had travelled to the workshop when she did not. *Id.*

In support of the specification, the agency submitted the appellant's travel voucher for expenses incurred while travelling to the workshop. *Id.* at 110-15, 120-23. Breen's notes indicate that on November 15, 2017, the appellant told him that she travelled to the workshop but did not attend because of anxiety, and that she had stayed at the home of a NRCS engineer, Robbins, the second night of her trip. *Id.* at 118. The next day, Breen contacted Robbins, who told him that the appellant had not stayed with her at all. *Id.* When he asked the appellant whom she had stayed with, the appellant told Breen that she had stayed with Robbins' friends, not Robbins. *Id.* Breen again contacted Robbins, who could not verify the appellant's statements. *Id.* On November 20, 2017, Breen met with the appellant, who told him she "never made it to Fort Myers," did not stay in a hotel, and returned to her home each day of the workshop after attempting to make the trip. *Id.* at 118-19.

The appellant did not deny submitting the travel voucher and admitted that she was "less than forthcoming" with Breen regarding where she was during the workshop due to her fear for her job. AF, Tab 23 at 18. In an email she sent to Breen on December 28, 2017, she stated that the hotel she had planned to stay at during the workshop charged her government credit card in error after she told them to charge her personal credit card instead. AF, Tab 33 at 42.

Here, I find that the appellant certified that she went to the workshop when she submitted the travel voucher. When Breen questioned the appellant, she told him that she had gone, despite later admitting she did not. Breen heard from multiple individuals that the appellant missed the workshop; he had an interest as the appellant's supervisor in discovering where she had been during those days and he had no reason to fabricate statements from the appellant about where she stayed. I find no reason to question his credibility. Accordingly, I find that the agency established by a preponderance of the evidence that the appellant displayed a lack of candor when she submitted a travel voucher for a trip she did not make and knowingly made an incorrect statement to her supervisor about where she was. Specification 1 is sustained.

### Specifications 2-4

Specifications 2 through 4 charged the appellant with verifying in the Quicktime pay period software on October 30, 2017, that she had worked eight hours each day on October 25-27, 2017 (the dates of the workshop) when she was in fact absent for 6.5 hours on each of those days without prior approval. AF, Tab 12 at 8. The agency provided the time and attendance record showing the appellant's pay period from October 15, 2017, to October 28, 2017, which encompassed the dates of the workshop. *Id.* at 125. On December 5, 2017, Breen requested that the appellant amend her timesheet to "AWOL" from the time she had entered.[6] *Id.* at 127-28. The timesheet, as of December 7, 2017, shows 6.5

_____

6 According to the time and attendance records, the appellant used 1.5 hours of annual leave each of the three days. AF, Tab 12 at 125.

hours of AWOL on the three dates listed in the specifications and a note that the timesheet was edited at the appellant's supervisor's request. *Id.* at 125. This form does not display the original entry made by the appellant. *Id.*

The appellant did not dispute that she had verified in Quicktime that she worked 8 hours on the relevant dates even though she had not. Accordingly, I find that the agency established by a preponderance of the evidence that the appellant engaged in conduct exhibiting a lack of candor when she verified that she worked eight hours on each of the days of the workshop. Specifications 2, 3, and 4 are sustained.

Charge 3 is sustained.

The agency proved its charge of Misuse of Government-Owned Vehicle (GOV) by a preponderance of the evidence (Charge 4).

*Specifications 1-3*

The three specifications are as follows:

**Specification 1:** On October 25, 2017, you did not use the GOV to attend the Workshop or for any other official government business.

**Specification 2:** On October 26, 2017, you did not use the GOV to attend the Workshop or for any other official government business.

**Specification 3:** On October 27, 2017, you did not use the GOV to attend the Workshop or for any other official government business, except for your return trip to your permanent duty station.

AF, Tab 12 at 8. To prove the charge of misuse of a government-owned vehicle, the agency must prove the appellant acted either with knowledge that her use of the vehicle would be unofficial or with reckless disregard for whether her use was for unofficial purposes. *Kimm v. Department of the Treasury*, 61 F.3d 888, 891 (Fed. Cir. 1995); *Gotshall v. Department of the Air Force*, 37 M.S.P.R. 27, 29 (1988).

In her response to the proposed removal, the appellant asserted that she "did conduct government business each day, as [she] attempted to drive to the workshop all three days." AF, Tab 11 at 11. She further argued that "[a] sudden change of plans, I do not believe is misuse of a GOV," given that she made an effort to attend the workshop. *Id*. at 14. In her close of record brief, she argued that she did not misuse the GOV as she had "no choice but to drive back and forth between her home and the workshop everyday (sic), due to her medical condition..." AF, Tab 23 at 19.

It is undisputed that the appellant did not use the GOV to attend the workshop; as previously stated, the appellant admitted that she did not attend the workshop. Driving back and forth between her home and halfway to the workshop is not official government business. To the extent the appellant argued that a sudden change of plans freed her from using a GOV for its designated purpose, the handbook of agency travel procedures the appellant received in 2015 dictates that when a traveler changes her plans and "elects to suspend the official assignment," for instance, if the traveler is sick, she must take leave during the interruption until she is "able to resume official duty." AF, Tab 12 at 61 and 64-65. As discussed in Charge 1, the appellant was absent without leave on the days of the workshop. I therefore find that the appellant was not using the GOV to attend the workshop or for any other official government business and was on notice that the use to which she put the vehicle would not qualify as official government business. I find that the appellant misused the GOV when she failed to use the GOV to attend the workshop during the dates identified in the specifications.

Charge 4 is sustained.

The agency proved its charge of Inappropriate Conduct by a preponderance of the evidence (Charge 5).

*Specifications 1 and 2*

The specifications of this charge arise out of the appellant's conduct following her supervisor's March 8, 2018, offer of accommodations:

**Specification 1:** According to Office Automation Assistant Patricia Camp, on March 8, 2018, you entered her office and said "My fucking lawyer was awesome. I am fucking getting everything I have been asking that fucking bastard (Tim Breen) for over two fucking years. It is illegal for the things he's been getting away with. But, now I get to do telework 2 days a week.

**Specification 2:** According to Fish and Wildlife Biologist, Marla Hamilton, on March 8, 2018, while she was at lunch with Fish and Wildlife Biologist, Steve Schubert, you approached them and said, "Dick head is finally giving me everything I have asked for."

AF, Tab 12 at 8-9. The charge of inappropriate conduct has no specific element of proof; it is established by proving that the employee committed the acts alleged in support of the broad label. *Canada v. Department of Homeland Security*, 113 M.S.P.R. 509, ¶ 9 (2010). "Nothing in law or regulation requires an agency to affix a label to a charge of misconduct, and an agency may simply describe actions that constitute misbehavior in narrative form and have its discipline sustained if the efficiency of the service suffers because of the misconduct." *Id.*

The evidence shows that on March 8, 2018, at 11:09 a.m., Breen emailed the appellant letting her know that he was approving her request to telework two days per week (Tuesday and Thursday), on a trial basis for 60 days, if: (1) she accepted the accommodations in addition to the ones offered on November 13, 2017; (2) completed the telework paperwork and had it signed; and (3) obtained a laptop and other necessary equipment. AF, Tab 13 at 31. This email followed email exchanges between the appellant and Breen where she told him he was breaking the law, discriminating against her, and sabotaging and destroying her career. *Id.* at 27-30. The record also included a "Note to File" from Patricia Camp, dated March 9, 2018, stating that the appellant referred to Breen as "that fucking bastard," stated that she got what she's been asking for, and telling Camp that "[i]t is illegal for the things he's been getting away with." AF, Tab 12 at 138. In a signed letter, Marla Hamilton stated that on March 8, 2018, the

16

appellant approached her and Steve Schubert and told them that "Dick head is finally giving me everything I have asked for . . . Timbo . . . finally realized he is breaking the law by not allowing me to telework." *Id.* at 140.

The appellant asserted that the statements provided by Camp and Hamilton were untrue and erroneous. AF, Tab 23 and 33 at 24. She argued that because she did not "get everything she requested and asked for," she would not have said what Camp and Hamilton stated she did. *Id.* The appellant further argued that text messages on her own cell phone prove that Camp, whose statement is the foundation for Specification 1, was somehow forced by Camp's supervisor to make the statement to Breen about the appellant's actions. AF, Tab 39 at 5.

I find that the agency proved by preponderant evidence that the appellant made the statements as described by Camp and Hamilton. Both employees' description of what the appellant said align with one another and with the timing of Breen's approval of the appellant's request to telework. In sum, I do not find the agency's version of the events of March 8, 2018, inherently improbable or that the appellant's coworkers harbored any motive to fabricate their statements. I find that the appellant's assertion that her coworkers' statements are false to be unpersuasive. The text message the appellant provided from Camp reads, "'I know it doesn't make a difference but I wanted to tell you how sorry I am at how things turned out.'" AF, Tab 40 at 6. The appellant provided additional screenshots of text conversations between herself and coworkers discussing their perceptions of Camp's statement; however, there is nothing in the messages to suggest that Camp lied when she provided her statement to Breen. *Id.* at 4-5. I do not read that implication into the text message conversation. Accordingly, I find that the agency established by a preponderance of the evidence that the appellant engaged in inappropriate conduct on March 8, 2018, after receiving authorization to telework two days per week on a trial basis. Specifications 1 and 2 are sustained.

Charge 5 is sustained.

## Nexus is apparent

An agency may establish nexus by showing that the employee's conduct (1) affected her or her coworkers' job performance; (2) affected management's trust and confidence in the employee's job performance; or (3) interfered with or adversely affected the agency's mission. *Johnson v. Department of Health & Human Services*, 86 M.S.P.R. 501, ¶ 1 (2000), *aff'd*, 18 Fed.Appx. 837 (Fed.Cir. 2001), *aff'd sub nom.*, *Delong v. Department of Health & Human Services*, 264 F.3d 1334 (Fed.Cir.2001), *cert. denied*, 536 U.S. 958 (June 28, 2002).

In this case, there is an obvious relationship between the sustained charges and the efficiency of the service. As a result, I find the agency proved that a nexus exists between the efficiency of the service and the charges of AWOL, failure to follow leave procedures, lack of candor, misuse of government-owned vehicle, and inappropriate conduct.

## The agency's chosen penalty does not exceed the bounds of reasonableness.

The agency must establish by preponderant evidence that its choice of penalty does not exceed the bounds of reasonableness. When an agency's charges have been sustained, the Board will review an agency-imposed penalty only to determine if the agency considered all the relevant factors and exercised management discretion within tolerable limits of reasonableness. *Wentz v. United States Postal Service*, 91 M.S.P.R. 176, 183 (2002) (citing *Stuhlmacher v. United States Postal Service*, 89 M.S.P.R. 272 (2001) and *Fowler v. United States Postal Service*, 77 M.S.P.R. 8, 12, *rev. dismissed*, 135 F.3d 773 (Fed. Cir. 1977) (Table)); *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 306 (1981). In determining whether the penalty is reasonable, the Board gives deference to the agency's discretion in exercising its managerial function of maintaining employee discipline and efficiency, recognizing that the Board's function is not to displace management's responsibility, but to ensure that management judgment has been properly exercised. *Howard v. United States Postal Service*, 72 M.S.P.R. 422, 425

(1996). Thus, where the agency's charge has been sustained, the Board will modify a penalty only when it finds the agency failed to weigh specific *Douglas* factors or that the selected penalty clearly exceeded the bounds of reasonableness. *Parker v. United States Postal Service*, 111 M.S.P.R. 510, ¶ 9 (2009).

In this case, I find that the agency reasonably exercised its discretion and appropriately weighed the *Douglas* factors in concluding that the appellant's conduct warranted removal. In his decision letter, Donald Progulske, the deciding official, described his consideration of the appellant's written response and her attachments as well as information regarding her health issues before adopting the *Douglas* factors analysis completed by the proposing official, Tim Breen, in deciding to remove the appellant. AF, Tab 11 at 5-7. The appellant's misconduct was found to be very serious in that she displayed a lack of candor as to her attendance at the workshop and travel voucher and misuse of a GOV. Her conduct affected management's trust in her ability to do her job, which involves interacting with representatives from various public and private entities. AF, Tab 12 at 9-13. Furthermore, the appellant had previously been issued a Letter of Reprimand for excessive tardiness, AWOL, and unprofessional conduct, as well as a three-day and a five-day suspension for AWOL. *Id*. The appellant's excessive absences and unwillingness to comply with her Leave Restriction were considered to be serious because it resulted in her missing site visits and meetings, and other staff being asked to complete her assignments. While the lack of notoriety of the offense, the appellant's nine years of service, and her anxiety were considered as mitigating factors, they did not outweigh her misconduct as management had lost confidence in the appellant's ability to do her job or be rehabilitated.

The appellant argued that the penalty of removal is too severe. AF, Tab 11 at 9 and Tab 33 at 29-39. Instead, she claimed that a 14-day or 30-day suspension would have been more reasonable. *Id*.

In evaluating a penalty, the Board will consider, first and foremost, the nature and seriousness of the misconduct and its relationship to the employee's

duties, position, and responsibilities. *Gaines v. Department of Air Force*, 94 M.S.P.R. 527, ¶ 9 (2003). Based upon Progulske's decision letter, I find that the deciding official reasonably exercised his discretion and appropriately considered the *Douglas* factors in concluding that the appellant's conduct warranted removal. I find that the deciding official gave appropriate weight to the appellant's work history and medical conditions and that his conclusions that the appellant lacked rehabilitative potential and an alternative penalty would be inadequate were reasonable based upon the serious and outrageous nature of the appellant's conduct. The appellant's years of service and the lack of notoriety do not outweigh the fact that she misused a GOV, failed to attend the workshop, and exhibited a lack of candor when she inputted work time she had not worked and failed to be forthcoming about it. I find the appellant's explanation that she was overcome with anxiety and could not attend the workshop is no excuse for her conduct. In addition, I find that the deciding official gave adequate consideration to the appellant's written reply. Accordingly, especially given the serious nature of the appellant's misconduct, I find that the penalty of removal did not exceed the tolerable bounds of reasonableness.[7]

The appellant failed to prove her affirmative defenses by a preponderance of the evidence.

Despite the fact that I have determined that the agency sustained its charges, the Board cannot sustain an agency decision to take an adverse action against an employee where the employee proves one of the affirmative defenses set out at 5 U.S.C. § 7701(c)(2). In this appeal, the appellant asserted that she was removed because of her disability and in retaliation for having filed an informal Equal Employment Opportunity (EEO) complaint. AF, Tab 23. While the

_____

7 Pursuant to 31 U.S.C. § 1349(b), the penalty for unauthorized use of a GOV is mandatory, at least a 30-day suspension.

appellant alleged that she suffers from acute anxiety, a heart condition and other ailments, it is unclear whether she claimed that the agency failed to provide a reasonable accommodation for her medical conditions or that it treated her differently because of her conditions. Accordingly, I have analyzed the appellant's claim under both theories of disability discrimination.

*Disability Discrimination*

As a federal employee, the appellant's disability discrimination claim arises under the Rehabilitation Act of 1973. However, the Equal Employment Opportunity Commission (EEOC) regulations implementing the Americans with Disabilities Act (ADA), as amended by the ADA Amendments Act (ADAAA), have been incorporated by reference into the Rehabilitation Act, and the Board applies them to determine whether there has been a Rehabilitation Act violation. Those regulations are found at 29 C.F.R. Part 1630.

<u>*Accommodation*</u>

To establish a prima facie case of disability discrimination based on a failure to accommodate, the appellant must show: (a) that she is an individual with a disability under 29 C.F.R. § 1630.2(g) and that the action appealed to the Board was based upon her disability; and (b) that she is a qualified individual with a disability; that is, that she satisfies the requisite skill, experience, education, and other job-related requirements of the position she holds or desires and can perform the essential functions of the position with or without reasonable accommodation. See 29 C.F.R. §§ 1630.2(m), 1630.3. An agency need not provide a reasonable accommodation or a reasonable modification to policies, practices, or procedures to an individual who meets the definition of disability solely because she is regarded as having a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. § 12201(h).

The appellant may prove that she has a disability by showing that she (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having

such an impairment. 42 U.S.C. § 12102(1), 29 C.F.R. § 1630.2(g)(1),(2),(3). The definition of disability is construed in favor of broad coverage. 42 U.S.C. § 12102(4)(A). A physical or mental impairment is any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, or any mental or psychological disorder. 29 C.F.R. § 1630.2(h). The test for whether a disability substantially limits the ability of an individual to perform a major life activity is applied as compared to most people in the general population. 29 C.F.R. § 1630.2(j)(1)(ii).

In the second method of proving a disability, an individual "has a record of" a disability if she has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities. This may include individuals who were treated for a disease but no longer have it as well as individuals who were misdiagnosed with a substantially limiting impairment even though they did not actually have that impairment. S. Rep. No. 116, 101st Cong., 2d Sess. 23. The impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's major life activities. *Id*. Whether an individual has such a record is to be broadly construed. If the individual has such a record, the agency need not have relied on that record for the individual to be covered under this test.

With regard to the third method of proving disability, an individual meets the requirement of being "regarded as having such an impairment" if she establishes that she has been subjected to a prohibited action because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity. However, the "regarded as" test shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of six months or less. 42 U.S.C. § 12102(3).

The appellant alleged that her ability to work (and arrive at work on time) was affected by anxiety and a heart condition that may have required surgery. AF,

Tab 23. Although she did not explain how the anxiety substantially limited one or more major life activities, I assume *arguendo* that the appellant is a qualified individual with a disability because she has the skills, experience, and/or education to hold her position.

An agency must provide reasonable accommodation to the known limitations of a qualified individual with a disability unless to do so would create an undue hardship. *See Simpson v. U.S. Postal Service*, 113 M.S.P.R. 346, ¶ 13 (2010) (citing 42 U.S.C. § 12112(a), (b)(5)(A); *Paris v. Department of the Treasury*, 104 M.S.P.R. 331, ¶ 11 (2006); 29 C.F.R. § 1630.9). Reasonable accommodation may entail modifications to the individual's current position or reassignment to a vacant position. 42 U.S.C. § 12111(9). And, an employer is liable for discriminating against an employee in need of accommodation based upon the employee's known disability. *See Conneen v. MBNA America Bank*, F.3d 318 (3rd Cir. 2003); 42 U.S.C. § 12112(b)(5)(A) (requiring only reasonable accommodations to known disability); *Beck v. University of Wisconsin Board of Regents*, 75 F.3d 1130, 1134 (7th Cir. 1996) (noting initial duty of employee to inform employer of disability is dictated by "common sense lest a disabled employee keep his disability a secret and sue later for failure to accommodate"). While the law does not require any formal mechanism or "magic words" to notify an employer that an employee needs an accommodation, either by direct communication or other appropriate means, the employee "must make clear that [he/she] wants assistance for his or her disability." *Jones v. United Parcel Service*, 214 F.3d 402, 408 (3rd Cir. 2000).

According to the appellant, she first requested to telework as a reasonable accommodation prior to March 2015. AF, Tab 23 at 11. That request was denied, and in August 2017, she again requested a reasonable accommodation. AF, Tab 13 at 5-19 and Tab 23 at 11-13. After the appellant provided medical documentation in which her doctor recommended a flexible schedule including potential

telework, the offer of accommodations was formalized on November 13, 2017, and included a flexible schedule and break times. *Id.*

The evidence established that the appellant requested a reasonable accommodation for anxiety around October 2017, at which point the agency made every effort to accommodate the appellant, including offering extra time for her to gather medical documentation, offering to amend her leave restriction and institute a gliding start time even prior to receiving the requisite medical documentation. AF, Tab 13 at 9 and 17. The appellant declined these agency efforts. *Id.* at 17. As a result, I find the agency did not fail to reasonably accommodate the appellant's disability.

*Disparate Treatment*

An appellant may also establish a prima facie case of disability discrimination under a disparate treatment theory by showing that she (1) is a member of a protected class; (2) suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. Here, the agency has articulated nondiscriminatory reasons for its action. Thus, the inquiry proceeds directly to the ultimate question of whether, upon weighing all of the evidence, the appellant has met her overall burden of proving discrimination. *See Gregory v. Department of the Army*, 114 M.S.P.R. 607, ¶ 40 (2010). The Board has held that a mixed motive analysis is appropriate in disability discrimination claims arising under the ADAAA and that the appellant need not prove that but for the discrimination, the action would not have been taken. *See Southerland v. Department of Defense*, 119 M.S.P.R. 566, ¶ 21 (2013). Under a mixed-motive analysis, an employee is entitled to some relief if she proves that her disability was "a motivating factor" in the decision, "even though other factors also motivated the practice." *Id.*, ¶ 23 (citing 42 U.S.C. §§ 2000e-2(m), 2000e- 5(g) (1)); *see also Forte v. Department of the Navy*, 123 M.S.P.R. 124, ¶ 27 (2016). An agency may limit the extent of the remedy if it demonstrates by clear and convincing evidence that it "would have taken the same action in the absence of

the impermissible motivating factor." *Southerland*, 119 M.S.P.R. 566, ¶¶ 23-25 (citing 42 U.S.C. § 2000e-5(g)(2)(B)).

While the appellant made conclusory statements asserting her belief she was discriminated against, she failed to provide any evidence that her anxiety or any other disability was a motivating factor in the agency's decision. Based on my review of the entire record, I find that the appellant did not establish that her disability was a motivating factor in her removal. While she made it clear that she felt her supervisor, Breen, discriminated against her, the appellant did not allege that the deciding official, Progulske, or either of her coworkers who provided statements to substantiate the inappropriate conduct charge (Camp and Hamilton) discriminated against her. AF, Tab 23. The appellant presented no direct evidence of discriminatory animus, nor has she provided circumstantial evidence of discrimination, such as: similarly situated nondisabled employees who were treated more favorably; that the agency lied about its reason for removing her; that the agency's explanation was inconsistent; that the agency failed to follow its established procedures; that the agency generally treats disabled employees less favorably; or incriminating statements. Rather, I find that the agency's removal action was taken solely in response to the appellant's misconduct. Therefore, I find she did not prove that the agency discriminated against her based on her disability under a disparate treatment theory.

*Retaliation for protected activity*

The appellant's claim of reprisal based on EEO activity is an allegation of a prohibited personnel practice under 5 U.S.C. § 2302(b)(1). Federal employees are protected against discrimination based on race, color, sex, religion, and national origin, as well as retaliation for the exercise of Title VII rights, by 42 U.S.C. § 2000e-16. *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 36-37 (2015). The Board has held that a violation is established where the appellant shows that discrimination or retaliation "was a motivating factor in the contested personnel action, even if it was not the only reason." *Id.*, ¶ 41. To establish a prima facie

case of retaliation for engaging in protected activity, the appellant must show that: (a) she engaged in protected activity; (b) the accused official(s) knew of the protected activity; (c) the adverse employment action under review could, under the circumstances, have been retaliation; and (d) there was a genuine nexus between the retaliation and the adverse employment action. *See Warren v. Department of the Army*, 804 F.2d 654, 656-58 (Fed. Cir. 1986); *Cloonan v. United States Postal Service*, 65 M.S.P.R. 1, 4 (1994). To establish a genuine nexus between the protected activity and the adverse employment action, the appellant must prove that the employment action was taken because of the protected activity. *Cloonan*, 65 M.S.P.R. at 4, n.3.

In support of her affirmative defense, the appellant alleged that she engaged in protected EEO activity when she notified her supervisors on January 12, 2015, of allegations of sexual harassment against a co-worker and when she was a witness in another employee's complaint. AF, Tab 23 at 5-6 and Tab 25 at 94-95. The agency considered this to be an "informal EEO complaint." AF, Tab 22 at 35. On February 3, 2015, she gave her supervisor a written statement of what had happened and requested a move to another office in a different building, away from her alleged harasser. AF, Tab 19 at 77-78. Breen later facilitated this move for her; he provided the appellant with information about making a formal complaint and options for elevating the issue but the appellant declined to formalize the complaint. AF, Tab 24 at 25-28. The agency stated that in terms of the appellant being a witness in another matter, it "is not aware of any allegation of sexual harassment against John Galvez by Shana DiPalma," and the appellant has declined to provide evidence that the deciding official was aware she had been a witness in another EEO complaint. AF, Tab 25 at 94-95. While it is evident that Breen, the proposing official whose analysis the deciding official adopted, knew about the protected activity the appellant had engaged in with regard to the "informal EEO complaint," the adverse action took place more than three years later following wrongdoing by the appellant. Further, the support that Breen

provided to the appellant after she made the allegation demonstrated that he wanted to support the appellant and not punish her for what happened. On these facts, I find that the appellant failed to show a genuine nexus between her protected activity and her removal. I further find that the appellant failed to show that the agency was aware she was a witness in any other EEO proceeding. Accordingly, I find that the appellant failed to prove she was removed in retaliation for having participated in any protected activity.

Decision

The agency's action is AFFIRMED.


FOR THE BOARD: _____/S/_____
Silvia de la Cruz
Administrative Judge

## NOTICE TO APPELLANT

This initial decision will become final on **December 23, 2019**, unless a petition for review is filed by that date. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. If you are represented, the 30-day period begins to run upon either your receipt of the initial decision or its receipt by your representative, whichever comes first. You must establish the date on which you or your representative received it. The date on which the initial decision becomes final also controls when you can file a petition for review with one of the authorities discussed in the "Notice of Appeal Rights" section, below. The paragraphs that follow tell you how and when to file with the Board or one of those authorities. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review.

If the other party has already filed a timely petition for review, you may file a cross petition for review. Your petition or cross petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record. You must file it with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.
Washington, DC 20419

A petition or cross petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing. A petition submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's eAppeal website (https://eappeal.mspb.gov).

NOTICE OF LACK OF QUORUM

The Merit Systems Protection Board ordinarily is composed of three members, 5 U.S.C. § 1201, but currently there are no members in place. Because a majority vote of the Board is required to decide a case, *see* 5 C.F.R. § 1200.3(a), (e), the Board is unable to issue decisions on petitions for review filed with it at this time. *See* 5 U.S.C. § 1203. Thus, while parties may continue to file petitions for review during this period, no decisions will be issued until at least two members are appointed by the President and confirmed by the Senate. The lack of a quorum does not serve to extend the time limit for filing a petition or cross petition. Any party who files such a petition must comply with the time limits specified herein.

For alternative review options, please consult the section below titled "Notice of Appeal Rights," which sets forth other review options.

**<u>Criteria for Granting a Petition or Cross Petition for Review</u>**

Pursuant to 5 C.F.R. § 1201.115, the Board normally will consider only issues raised in a timely filed petition or cross petition for review. Situations in which the Board may grant a petition or cross petition for review include, but are not limited to, a showing that:

(a) The initial decision contains erroneous findings of material fact. (1) Any alleged factual error must be material, meaning of sufficient weight to warrant an outcome different from that of the initial decision. (2) A petitioner who alleges that the judge made erroneous findings of material fact must explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error. In reviewing a claim of an erroneous finding of fact, the Board will give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing.

(b) The initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case. The petitioner must explain how the error affected the outcome of the case.

(c) The judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case.

(d) New and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. To constitute new evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed.

As stated in 5 C.F.R. § 1201.114(h), a petition for review, a cross petition for review, or a response to a petition for review, whether computer generated, typed, or handwritten, is limited to 30 pages or 7500 words, whichever is less. A reply to a response to a petition for review is limited to 15 pages or 3750 words, whichever is less. Computer generated and typed pleadings must use no less than

12 point typeface and 1-inch margins and must be double spaced and only use one side of a page. The length limitation is exclusive of any table of contents, table of authorities, attachments, and certificate of service. A request for leave to file a pleading that exceeds the limitations prescribed in this paragraph must be received by the Clerk of the Board at least 3 days before the filing deadline. Such requests must give the reasons for a waiver as well as the desired length of the pleading and are granted only in exceptional circumstances. The page and word limits set forth above are maximum limits. Parties are not expected or required to submit pleadings of the maximum length. Typically, a well-written petition for review is between 5 and 10 pages long.

If you file a petition or cross petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. A petition for review must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you or your representative more than 5 days after the date of issuance, 30 days after the date you or your representative actually received the initial decision, whichever was first. If you claim that you and your representative both received this decision more than 5 days after its issuance, you have the burden to prove to the Board the earlier date of receipt. You must also show that any delay in receiving the initial decision was not due to the deliberate evasion of receipt. You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (*see* 5 C.F.R. Part 1201, Appendix 4) to support your claim. The date of filing by mail is determined by the postmark date. The date of filing by fax or by electronic filing is the date of submission. The date of filing by personal delivery is the date on which the Board receives the document. The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service. Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party. *See* 5 C.F.R.

§ 1201.4(j).  If the petition is filed electronically, the online process itself will serve the petition on other e-filers.  *See* 5 C.F.R. § 1201.14(j)(1).

A cross petition for review must be filed within 25 days after the date of service of the petition for review.

### NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

notice OF APPEAL rights

You may obtain review of this initial decision only after it becomes final, as explained in the "Notice to Appellant" section above.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this decision when it becomes final, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be underline(received) by the court

within **60 calendar days** of <u>the date this decision becomes final</u>. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after this decision becomes final</u> under the rules set out in the Notice to Appellant section, above. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If the action involves a claim of

discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a courtappointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after this decision becomes final as explained above. 5 U.S.C. § 7702(b)(1).

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and you wish to challenge the Board's rulings on your whistleblower claims only, excluding all other issues, then you may file a petition for judicial review

with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date this decision becomes final</u> under the rules set out in the Notice to Appellant section, above. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals<br>
for the Federal Circuit<br>
717 Madison Place, N.W.<br>
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx

**Extremely Urgent**

This envelope is for use with the following services:

UPS Next Day Air®
UPS Worldwide Express™
UPS 2nd Day Air®

PULL TAB TO OPEN

Call **1-800-PICK-UPS®** (1-800-742-5877) or visit **UPS.com®**.

**Domestic Shipments**
- To qualify for the Letter rate, UPS Express Envelopes may only contain correspondence, urgent documents, and/or electronic media, and must weigh 8 oz. or less. UPS Express Envelopes containing items other than those listed or weighing more than 8 oz. will be billed by weight.

**International Shipments**
- The UPS Express Envelope may be used only for documents of no commercial value. Certain countries consider electronic media as documents. Visit ups.com/importexport to verify if your shipment is classified as a document.
- To qualify for the Letter rate, the UPS Express Envelope must weigh 8 oz. or less. UPS Express Envelopes weighing more than 8 oz. will be billed by weight.

**Note:** Express Envelopes are not recommended for shipments of electronic media containing sensitive personal information or breakable items. Do not send cash or cash equivalent.

## Reusable Express Envelope
### Letter Size
Reduce paper waste by using this envelope a second time either to return to sender or with another recipient. See reuse instructions on flap above.

## Decision Green℠
Decision Green is UPS's environmental platform, reflecting our pursuit of sustainable business practices worldwide. For example, this envelope is made from 100% recycled material and is both reusable and recyclable.



100% Recycled fiber
80% Post-Consumer

This envelope is for use

**UPS Next Day Air®**
**UPS Worldwide Express®**
**UPS 2nd Day Air®**

...not use this envelope for:
...S Ground
...S Standard
...S 3 Day Select®
...S Worldwide Expedited®

...ly shipping documents on this side.



DELTA HARRIS
(772) 501-9836
THE UPS STORE #4239
9611 N US HIGHWAY 1
SEBASTIAN FL 32958-6363

0.5 LBS LTR 1 OF 1
SHP WT: LTR
DATE: 20 FEB 2020

SHIP FOR THE FEDERAL CIRCUIT
TO: US COURT OF APPEALS
    717 MADISON PL NW

WASHINGTON  DC 20439-0001

MD 201 9-84

**UPS NEXT DAY AIR**                1
TRACKING #: 1Z V9F 297 24 8843 6630



BILLING: P/P
SIGNATURE REQUIRED
UPS CARBON NEUTRAL SHIPMENT

ISH 13.00H ZIP 450 83.5U 12/2019

...n 100 years
...rcel Service.

  

International Shipping Notice — Carriage hereunder may be subject to the rules relating to liability and other terms and conditions... SEE NOTICE ON REVERSE regarding UPS Terms and notice of limitation of liability. Where allowed by law, shipper authorizes UPS to act as forwarding agent for export control and customs purposes. If exported from the US, shipper certifies that the commodities, technology or software were exported from the U.S. in accordance with the Export Administration Regulations. Diversion contrary to law is prohibited.
the Convention on the Contract for the International Carriage of Goods by Road (the "CMR Convention"). These commodities, technology or software were exported from the U.S. in accordance with the Export Administration Regulations. Diversion contrary to U.S. law is prohibited.

010195112  4/14  PAC  United Parcel Service



# U.S. MERIT SYSTEMS PROTECTION BOARD

### Office of the Clerk of the Board
**1615 M Street, N.W.**
**Washington, D.C. 20419-0002**

Phone: 202-653-7200; Fax: 202-653-7130; E-Mail: mspb@mspb.gov

20-1522

# ATTESTATION

I HEREBY ATTEST that the attached index represents a list of the documents comprising the administrative record of the Merit Systems Protection Board in the appeal of Delta Danielle Harris *v.* Department of the Interior, MSPB Docket No. AT-0752-19-0427-I-1, and that the administrative record is under my official custody and control on this date

on file in this Board

_____
March 3, 2020
Date

_____
Jennifer Everling
Acting Clerk of the Board

# CERTIFICATE OF SERVICE

I hereby certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

Petitioner

U.S. Mail       Delta Danielle Harris
                405 Autumn Terrace
                Sebastian, FL 32958

Respondent

U.S. Mail       Robert E. Kirschman, Director
                Commercial Litigation Branch
                Civil Division Classification Unit
                U.S. Department of Justice
                1100 L Street, N.W., Room 12124
                Washington, DC  20530


_____
March 3, 2020
(Date)

                                Jennifer Everling
                                Acting Clerk of the Board

INDEX

DELTA DANIELLE HARRIS

v.

DEPARTMENT OF THE INTERIOR

MSPB Docket No.  AT-0752-19-0427-I-1

IA-REFORM ACT MERIT

| TAB | VOLUME | DESCRIPTION OF DOCUMENT | DATE OF RECEIPT OR ISSUANCE |
|-----|--------|-------------------------|-----------------------------|
| 1 | 1 | Appellant - Initial Appeal | April 17, 2019 |
| 2 | 1 | MSPB - Acknowledgment Order | April 26, 2019 |
| 3 | 1 | Agency - Agency Representative Addition | May 28, 2019 |
| 4 | 1 | Agency - Request for Extension | May 28, 2019 |
| 5 | 1 | Appellant - Appellant Representative | May 28, 2019 |
| 6 | 1 | MSPB - Order Granting Extension of Time | May 28, 2019 |
| 7 | 1 | Appellant - Designation of Representative | June 04, 2019 |
| 8 | 1 | Appellant - Unopposed Motion to Extend Discovery initiation | June 09, 2019 |
| 9 | 1 | MSPB - Order Granting Extension of Time | June 10, 2019 |
| 10 | 1 | Agency - Agency Response Part 1 | June 11, 2019 |
| 11 | 1 | Agency - Agency Response Part 2 | June 11, 2019 |
| 12 | 1 | Agency - Agency Response Part 3 | June 11, 2019 |
| 13 | 1 | Agency - Agency Response Part 4 | June 11, 2019 |
| 14 | 1 | MSPB - Hearing Order | June 14, 2019 |
| 15 | 1 | Appellant - Request for Rescheduling July 10 Prehearing Conference | June 14, 2019 |
| 16 | 1 | MSPB - Order Rescheduling | June 17, 2019 |
| 17 | 1 | Appellant - Motion to Compel or Motion to Extend Upcoming Deadlines | June 26, 2019 |
| 18 | 1 | MSPB - Suspension and Rescheduling Order | June 29, 2019 |

*Page 1 of 3*

| 19 | 1 | Agency - Prehearing Statement | July 29, 2019 |
| 20 | 1 | Appellant - Request for Decision on Record and Permit to Submit Brief | August 01, 2019 |
| 21 | 1 | MSPB - Order and Summary of Close of Record Conference | August 01, 2019 |
| 22 | 1 | Agency - Close of Record Statement | September 03, 2019 |
| 23 | 1 | Appellant - Close of Record Brief | September 04, 2019 |
| 24 | 1 | Appellant - Ex A and following | September 04, 2019 |
| 25 | 1 | Appellant - Ex H(1) and following | September 04, 2019 |
| 26 | 1 | Agency - Motion for Sanctions | September 04, 2019 |
| 27 | 1 | Agency - Response to Appellant's Close of Record Statement | September 09, 2019 |
| 28 | 1 | Appellant - Motion for Change in Rep & Request for EOT to Respond | September 09, 2019 |
| 29 | 1 | Appellant - Motion to Deny | September 09, 2019 |
| 30 | 1 | MSPB - Order | September 10, 2019 |
| 31 | 1 | Appellant - Witness Affidavits | September 12, 2019 |
| 32 | 1 | Appellant - Witness 2 | September 12, 2019 |
| 33 | 1 | Appellant - Rebuttal Part 1 | September 12, 2019 |
| 34 | 1 | Appellant - Rebuttal Part 2 | September 12, 2019 |
| 35 | 1 | Appellant - Witness 3 | September 12, 2019 |
| 36 | 1 | Appellant - Addition Rebuttal Submittal Part 2 | September 12, 2019 |
| 37 | 1 | Appellant - Rebuttal Part 3 | September 12, 2019 |
| 38 | 1 | Appellant - Motion for Guidance | September 13, 2019 |
| 39 | 1 | Appellant - Motion for Supplemental Evidence to Close of Record | September 24, 2019 |
| 40 | 1 | Appellant - Motion to Supplement Attachment A-C | September 24, 2019 |
| 41 | 1 | Agency - Response to Appellant's Motions to Supplement the Record | September 26, 2019 |

Page 2 of 3

| 42 | 1 | Appellant - Motion to Resubmit Arthur Roybal and Paula Halupa Affidavits with Original Signe | October 08, 2019 |
| 43 | 1 | Appellant - Motion to Resubmit Paula Halupa Affidavit with Original Signed Sworn Affidavit | October 08, 2019 |
| 44 | 1 | Appellant - Motion to Resubmit Kristi Yanchis' Affidavit with Original Signed Sworn Affidavi | October 08, 2019 |
| 45 | 1 | MSPB - Order | October 09, 2019 |
| 46 | 1 | Agency - Request for an Extension | October 09, 2019 |
| 47 | 1 | MSPB - Order Granting Extension of Time | October 10, 2019 |
| 48 | 1 | Appellant - Motion to Submit New Evidence | October 10, 2019 |
| 49 | 1 | Agency - Response to Appellant's Supplemental Documents and Statments | October 23, 2019 |
| 50 | 1 | MSPB - Initial Decision | November 18, 2019 |
| 51 | 1 | MSPB - Certificate of Service | November 18, 2019 |

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
### ATLANTA REGIONAL OFFICE

| | |
|---|---|
| DELTA DANIELLE HARRIS,<br>　　　　　　Appellant, | DOCKET NUMBER<br>AT-0752-19-0427-I-1 |
| 　　v. | |
| DEPARTMENT OF THE INTERIOR,<br>　　　　　　Agency. | DATE: November 18, 2019 |

Delta Danielle Harris, Sebastian, Florida, pro se.

Cecelia Townes, Esquire, Atlanta, Georgia, for the agency.

**BEFORE**
Silvia de la Cruz
Administrative Judge

## INITIAL DECISION

On April 17, 2019, Delta D. Harris filed an appeal with the U.S. Merit Systems Protection Board challenging her removal from the position of Fish and Wildlife Biologist, with the Department of the Interior, Fish and Wildlife Service, in Vero Beach, Florida. The Board has jurisdiction over this appeal pursuant to 5 U.S.C. §§ 7511(a)(1), 7512(1), and 7513(d).

Because the appellant withdrew her request for a hearing, this decision is based on the written record. For the reasons set forth below, the agency's action is AFFIRMED.

# ANALYSIS AND FINDINGS

Background

Prior to her removal, the appellant held the position of Fish and Wildlife Biologist, GS-0401-11, in the South Florida Ecological Services Office (SFESO), in Vero Beach, Florida. Appeal File (AF), Tab 11 at 5 and Tab 12 at 213-219. In addition to "biologist," the appellant also held the role of SFESO's National Resource Conservation Service (NRCS) Liaison. AF, Tab 12 at 205. In this capacity, she attended the NRCS National and Regional workshops when she was available and the NRCS's annual Wetland Reserve Easement Workshop. *Id.*

In early August of 2017, the appellant received an email with details of the 2017 NRCS workshop. *Id.* at 130-34. The workshop was to be held in Naples, Florida, from October 25-27, 2017, and included discussions about wetlands conservation as well as time in the field. *Id.* On Friday, August 4, 2017, the appellant sent several emails to other biologists in her office with her supervisor, Timothy Breen, copied on the emails, stating her intention to attend the workshop and her plans to make hotel reservations for the group. *Id.* The appellant also planned to give a presentation to workshop attendees. AF, Tab 11 at 11 and Tab 12 at 117.

At this point in the fall of 2017, the appellant had a Leave Restriction in place as a result of past absences and inconsistent attendance. AF, Tab 12 at 69-71. This restriction required the appellant to notify Breen and get his approval prior to taking any scheduled leave. *Id.* For unscheduled annual leave, the appellant had to notify Breen and provide written proof of an emergency within two hours after her shift was scheduled to begin. *Id.* For unscheduled sick leave, the appellant was required to notify Breen within one hour after her shift was scheduled to begin and then provide a doctor's note upon her return. *Id.* Noncompliance with the Leave Restriction meant the appellant risked her absences being recorded as Absent Without Leave (AWOL). *Id.* These restrictions

were placed on the appellant effective May 19, 2017, through May 19, 2018.[1] *Id.* The appellant signed that document acknowledging her receipt on May 19, 2017. *Id.*

On October 24, 2017, the appellant checked out a government-owned vehicle for seven days for the "NRCS Workshop." *Id.* at 136. However, the appellant did not attend the workshop on October 25-27, 2017. *Id.* at 118-19 and Tab 11 at 11. Nevertheless, on November 13, 2017, she submitted a voucher for $273.25, constituting expenses she incurred from attending "NRCS Fort Myers"[2] on October 25-27, 2017. AF, Tab 12 at 110-115.

On March 16, 2018, the agency notified the appellant that it was proposing her removal for AWOL, failure to follow leave procedures, lack of candor, misuse of a government-owned vehicle (GOV), and inappropriate conduct. AF, Tab 12 at 5-15. Appellant provided a written response on April 6, 2018. AF, Tab 11 at 9-57. After considering the appellant's written response and relevant *Douglas* factors, Donald (Bob) Progulske, Everglades Program Supervisor, issued a decision sustaining all charges and finding the penalty of removal to be adequate and appropriate. AF, Tab 11 at 5-7. The appellant's removal was effective April 20, 2018, and on April 17, 2019, she filed the instant appeal.[3] AF, Tab 1 and Tab 11 at 5-7.

---

[1] The appellant's Leave Restriction dated May 19, 2017 was an extension of her original Leave Restriction, dated November 25, 2015, which was incrementally extended several times in the intervening months. AF, Tab 12 at 69-80.

[2] The workshop was held in Naples, Florida, but the hotel the appellant reserved was in Fort Myers, Florida. AF, Tab 12 at 113.

[3] On May 7, 2018, the appellant initiated an Equal Employment Opportunity (EEO) complaint alleging discrimination based on her physical and mental disabilities and retaliation for prior EEO activity. AF, Tab 10 at 28-41. On May 14, 2019, the agency issued a Final Agency Decision finding that the appellant had not been subjected to unlawful employment discrimination. *Id.*

4

<u>Standard of Review</u>

In an appeal in which a Federal agency takes an adverse action against a tenured employee, the Board will sustain the action if the charges are supported by a preponderance of the evidence.[4] 5 U.S.C. § 7701(c)(1)(B). In addition, the agency must show that its action promotes the efficiency of the service and that the imposed penalty is reasonable. *Vaughn v. United States Postal Service*, 109 M.S.P.R. 469, ¶ 13 (2008).

<u>The agency proved its charge of absent without leave (AWOL) by a preponderance of the evidence (Charge 1).</u>

***Specifications 1-3***

In the first charge, the agency charged the appellant with AWOL when she failed to attend each day of the NRCS Workshop on October 25-27, 2017, without submitting a leave request or getting the absences approved by Breen.[5] AF, Tab 12 at 5-6. In order for an agency to prove AWOL, the agency must show that (1) the employee was absent, and that (2) her absence was not authorized, or that her request for leave was properly denied. *Wesley v. U.S. Postal Service*, 94 M.S.P.R. 277, ¶ 14 (2003). An agency is required to prove only the essence of its charge. It need not prove each factual specification supporting the charge. *Hicks v. Department of the Treasury*, 62 M.S.P.R. 71, 74 (1994), *aff'd*, 48 F.3d 1235 (Fed. Cir. 1995) (Table). While an agency has broad discretion in approving or denying a request for annual leave, it is not wholly unfettered in doing so. *Benally v. Department of Interior*, 71 M.S.P.R. 537 (1996).

---

[4] A preponderance of the evidence is that degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

[5] Specification 1 deals with October 25, 2017, specification 2 with October 26, 2017, and specification 3 with October 27, 2017. AF, Tab 12 at 5-6.

The record shows that on October 31, 2017, Breen contacted Joe Prenger, State Coordinator, Partners for Fish and Wildlife Program, to ask about the appellant's presentation at the workshop. AF, Tab 12 at 117. Prenger informed Breen that the appellant had not been present at the workshop and he had given the presentation in her place. *Id.* at 117 and 121. Two other attendees, Tim Towles and Oliver Van Den Ende, Restoration Coordinator, Everglades Headwaters National Wildlife Refuge Complex, confirmed to Breen that the appellant was not present for any of the three days of the workshop. *Id.* at 117 and 120. On November 9, 2017, Breen contacted Crenel Francis, the NRCS Florida Easement Program Coordinator, who planned the workshop. Francis verified that the appellant was not in attendance but that she had told Francis she was having a health issue. *Id.* at 117. Breen's notes indicated that the appellant did not contact him according to her Leave Restriction to tell him prior to the workshop that she would not be present and to request leave. *Id.* She also did not call him on any of the days of the workshop to alert him of an illness that would have prevented her from attending. *Id.*

In her written response to the proposed removal, the appellant admitted that she did not attend the workshop. AF, Tab 11 at 11-12. However, she asserted that she never contacted Breen regarding her absence from the workshop due to her fear for her job, fear of consequences, and her own carelessness. *Id.* She also alleged that Breen knew of the possibility that she might not attend the workshop, pending the confirmation of the date of a medical procedure. *Id.* The appellant asserted that she was conducting government business each day that she was charged with AWOL because she attempted to drive to the workshop but had to turn around because she was "full of anxiety and depression." *Id.* at 14. The appellant provided copies of text messages between her and Jessica Robbins, an NRCS engineer who was also a friend, where she alerted her of her intention to make it to the workshop and her subsequent absences. *Id.* at 38-41. In her close of record brief, she argued that between October 23 and October 30, 2017, she was

"excused from work for the reason that she was incapacitated." AF, Tab 23 at 10 and 17.

It is undisputed that the appellant did not attend the workshop on the specified dates, and the evidence showed that her absences were not authorized. The appellant's arguments that she was incapacitated and so was excused from work on the days of the workshop fall flat; the Board has found that an appellant should explain "how any of her alleged ailments prevented her from attending her scheduled training on the dates in question, *or how any medical condition accounted for her failure to contact her supervisor* . . . to request leave." *Sherlock v. General Services Admin.*, 103 M.S.P.R. 352, 358 (2006) (emphasis added). The appellant failed to notify Breen regarding her absences from the workshop and did not explain why her anxiety made her unable to contact him, especially when she was able to contact her friend Robbins. I find that the appellant engaged in the conduct as described in specifications one through three. The specifications are sustained.

### Specification 4

In specification 4, the agency charged the appellant with AWOL when she was absent from her duty station at SFESO on November 6, 2017, from 8:00 a.m. to 11:00 a.m. without having her absence approved by Breen. AF, Tab 12 at 6.

According to a November 14, 2017, notice from Breen to the appellant, the appellant was absent from work on November 6, 2017, from the beginning of her tour of duty until approximately 11:00 a.m. AF, Tab 19 at 69. This memo described the appellant's understanding that she was out of annual leave at the time and that the time would be coded as AWOL. *Id.* The appellant does not address this specification in her filings and the extensive time sheets she provided cover only the period of time from February 22, 2015, to October 14, 2017. AF, Tab 25 at 104-313.

Because the appellant did not dispute that she was absent on November 6, 2017, from 8:00 a.m. to 11:00 a.m. and because she did not show that her absence

was authorized, I find that the agency established that the appellant was absent without leave. Specification 4 is sustained.

Charge 1 is SUSTAINED.

The agency proved its charge of failure to follow leave procedures by a preponderance of the evidence (Charge 2).

*Specifications 1-7*

The second charge is supported by seven specifications:

**Specification 1**: On December 28, 2017, you did not notify me until 9:50 a.m. that you would be late arriving at work. In addition, your absence from work from 8:00 a.m. to 9:50 a.m. had not been approved in advance.

**Specification 2**: On January 18, 2018, you reported to work at 10:00 a.m. without any notification of your expected late arrival. In addition, your absence from 8:00 a.m. to 10:00 a.m. had not been approved in advance.

**Specification 3**: On February 5, 2018, you did not notify me until 9:45 a.m. that you would not be reporting to work that day. In addition, your absence from work from 8:00 a.m. to 9:45 a.m. had not been approved in advance.

**Specification 4**: On February 7, 2018, you did not notify me until 12:15 p.m. that you would be taking leave for the entire day. In addition, your absence from 8:00 a.m. to 12:15 p.m. had not been approved in advance.

**Specification 5**: On February 9, 2018, you did not notify me until 9:07 a.m. that you would not be reporting to work that day. In addition, your absence from 8:00 a.m. to 9:07 a.m. had not been approved in advance.

**Specification 6**: On February 21, 2018, you did not notify me until 9:16 a.m. that you would be reporting to work late. In addition, your absence from 8:00 a.m. to 9:45 a.m. had not been approved in advance.

**Specification 7**: On February 28, 2018, you did not notify me until 9:17 a.m. that you would not be reporting to work. In addition, your absence from 8:00 a.m. to 9:17 a.m. had not been approved in advance.

AF, Tab 12 at 6-7. In order to prove a charge of failure to follow leave requesting procedures, the agency must show that it placed the appellant on notice of the requirements for requesting leave, it informed her that she could be disciplined if she failed to comply with these requirements, and the appellant failed to comply. *See Abbott v. U.S. Postal Service*, 121 M.S.P.R. 294, ¶ 10 (2014).

As previously described, the appellant was on notice she had been placed on Leave Restriction as a result of past absences and inconsistent attendance. AF, Tab 12 at 69-71. These restrictions were to remain in place until May 19, 2018, and required the appellant to notify her supervisor of any absences to get his approval. *Id.*

In response to this charge, the appellant provided payroll sheets and copies of Quicktime records that indicated she used Leave Share time, Leave Without Pay, and Sick Time on the dates listed in the specifications. AF, Tab 39 at 14-23, 25. She stated that these documents directly refute Charge 2 because the time sheets prove that she was not AWOL on those dates. *Id.* at 4. Additionally, the appellant provided an index of the doctor's notes she stated she received to excuse her from work. AF, Tab 36 at 21-28. Of the dates included in the specifications for this charge, only December 28, 2017 (Specification 1), was mentioned in this index. *Id.* at 27-28. The appellant had a doctor's note dated December 28, 2017, reading: "Excuse her from 12-26.27.28-2017." AF, Tab 25 at 44. The appellant did not say when or if she provided that December 28, 2017, medical excuse to Breen in a timely manner pursuant to the Leave Restriction. AF, Tab 36 at 27-28. She did not provide medical excuses for the dates listed in specifications two through seven. *Id.*

In support of the charge, the agency provided Breen's notes on the appellant's tardiness and absences. AF, Tab 22 at 44-82. Breen noted that on December 28, 2017, he had had "[n]o communication from Delta…not in office" as of 9:00 a.m. *Id.* at 78. He noted that he received an email at 9:50 a.m. from Delta that she did not feel well and that she then arrived at 10:45 a.m. *Id.* Breen

also noted that on January 18, February 5, February 7, February 9, February 21, and February 28, 2018, the appellant was late to work with no notice or missed work with late notice, as described in the specifications. *Id.* at 79-80.

I find that the appellant's submission of the Quicktime documentation showing approval of Leave Share, Sick Time, and LWOP on the dates listed in this charge is irrelevant to the determination of whether the charge should be sustained. The appellant mischaracterized Charge 2 as a charge of AWOL on those dates; it is not. AF, Tab 39 at 4. Charge 2 is a charge of failure to follow leave procedures and the time sheets she provided have no details regarding when or if the appellant notified her supervisor that she would be absent, as she was required to do pursuant to her Leave Restriction. AF, Tab 12 at 6-7. They also do not indicate when the Leave Share, Sick Time, and LWOP were approved. Thus, I find that this evidence does not directly relate to Charge 2.

In this appeal, I find the agency's evidence outweighs the appellant's evidence. Breen's signed declaration attests to the appellant's habit of being late to the office without requesting leave as required per the Leave Restriction. AF, Tab 22 at 41-82. He noted his commitment to keeping track of the appellant's absences and excuses and his initial belief that the appellant's tardiness and absences were a temporary problem, and the supporting documentation is consistent with his account. *Id.* The extensive records show when the appellant was not in the office, what excuse she provided (when one was provided), how she notified Breen (including what specific email address was used), and whether he received a doctor's excuse or was told one would be forthcoming. *Id.* These records indicate that Breen was dedicated to ensuring accuracy in his supervision of the appellant. The numerous medical excuses the appellant provided to Breen over several years which both individuals documented demonstrate that the appellant knew how to request leave and how to get the medical documentation to her supervisor in an appropriate manner. *Id.*; AF, Tab 24 at 54-70 and Tab 25 at 9-45 and 64-68. Further, Breen's statement that he wanted to help the appellant is

corroborated by his repeated assurances that the Leave Restriction could be lifted if the appellant reliably and consistently attended work and followed procedures. AF, Tab 22 at 41 and Tab 12 at 76-80.

In contrast, the appellant was on notice that a deficiency in providing an appropriate excuse pursuant to her Leave Restriction could result in discipline, as she had been disciplined for similar issues before. AF, Tab 12 at 96-103 and 175-82. In failing to respond to the actual details of this charge (Failure to Follow Leave Procedures instead of AWOL) with a signed affidavit, the appellant has not provided any evidence contradicting the agency's evidence against her. In sum, I do not find that the appellant provided a satisfactory excuse to Breen for any of dates described in the specifications and she therefore did not follow the procedures she was required to under her Leave Restriction. I find that the agency established by a preponderance of the evidence that the appellant failed to follow leave procedures. Specifications 1 through 7 are sustained.

Charge 2 is sustained.

## The agency proved its charge of lack of candor by a preponderance of the evidence (Charge 3).

### *Specification 1*

According to the notice of proposed removal, the appellant lacked candor when she presented herself as having travelled to and attended the workshop when she did not. AF, Tab 12 at 7-8. The Federal Circuit has stated that "[l]ack of candor and falsification are different, although related, forms of misconduct, and the latter is not a necessary element of the former." *Ludlum v. Department of Justice*, 278 F.3d 1280, 1283-84 (Fed. Cir. 2002). To establish falsification, an agency needs to show that the employee made an affirmative misrepresentation and prove intent to deceive. Conversely, lack of candor "is a broader and more flexible concept." *Id.* "Although lack of candor necessarily involves an element of deception, 'intent to deceive' is not a separate element of that offense as it is

for 'falsification.'" *Id.* at 1284-85. The agency must produce some evidence that the appellant's actions, under the circumstances, involved an "element of deception." Id. at 1284. In *Rhee v. Department of the Treasury*, 117 M.S.P.R. 640, ¶ 11 (2012), overruled in part on other grounds by *Savage v. Department of the Army*, 122 M.S.P.R. 612 (2015), a case in which the appellant was charged with lack of candor for making an incorrect statement to her supervisor, the Board found that, to establish the "element of deception," the agency had to prove that the appellant knowingly made an incorrect statement. Because the agency failed to establish by preponderant evidence that the appellant knew her statement was false, the Board found the administrative judge was correct in not sustaining the charge. *Id.*, ¶¶ 12–6. Subsequently, the Board held that lack of candor requires proof of the following elements: (1) that the employee gave incorrect or incomplete information; and (2) that she did so knowingly. *Fargnoli v. Department of Commerce*, 123 M.S.P.R. 330, ¶ 17 (2016).

Specification 1 charged the appellant with submitting a travel voucher for reimbursement of expenses incurred to travel to the workshop, although the appellant had not attended. AF, Tab 12 at 7-8. It also charged the appellant with telling Breen that she had travelled to the workshop when she did not. *Id.*

In support of the specification, the agency submitted the appellant's travel voucher for expenses incurred while travelling to the workshop. *Id.* at 110-15, 120-23. Breen's notes indicate that on November 15, 2017, the appellant told him that she travelled to the workshop but did not attend because of anxiety, and that she had stayed at the home of a NRCS engineer, Robbins, the second night of her trip. *Id.* at 118. The next day, Breen contacted Robbins, who told him that the appellant had not stayed with her at all. *Id.* When he asked the appellant whom she had stayed with, the appellant told Breen that she had stayed with Robbins' friends, not Robbins. *Id.* Breen again contacted Robbins, who could not verify the appellant's statements. *Id.* On November 20, 2017, Breen met with the appellant, who told him she "never made it to Fort Myers," did not stay in a hotel, and

returned to her home each day of the workshop after attempting to make the trip. *Id.* at 118-19.

The appellant did not deny submitting the travel voucher and admitted that she was "less than forthcoming" with Breen regarding where she was during the workshop due to her fear for her job. AF, Tab 23 at 18. In an email she sent to Breen on December 28, 2017, she stated that the hotel she had planned to stay at during the workshop charged her government credit card in error after she told them to charge her personal credit card instead. AF, Tab 33 at 42.

Here, I find that the appellant certified that she went to the workshop when she submitted the travel voucher. When Breen questioned the appellant, she told him that she had gone, despite later admitting she did not. Breen heard from multiple individuals that the appellant missed the workshop; he had an interest as the appellant's supervisor in discovering where she had been during those days and he had no reason to fabricate statements from the appellant about where she stayed. I find no reason to question his credibility. Accordingly, I find that the agency established by a preponderance of the evidence that the appellant displayed a lack of candor when she submitted a travel voucher for a trip she did not make and knowingly made an incorrect statement to her supervisor about where she was. Specification 1 is sustained.

### Specifications 2-4

Specifications 2 through 4 charged the appellant with verifying in the Quicktime pay period software on October 30, 2017, that she had worked eight hours each day on October 25-27, 2017 (the dates of the workshop) when she was in fact absent for 6.5 hours on each of those days without prior approval. AF, Tab 12 at 8. The agency provided the time and attendance record showing the appellant's pay period from October 15, 2017, to October 28, 2017, which encompassed the dates of the workshop. *Id.* at 125. On December 5, 2017, Breen requested that the appellant amend her timesheet to "AWOL" from the time she

had entered.[6] *Id.* at 127-28. The timesheet, as of December 7, 2017, shows 6.5 hours of AWOL on the three dates listed in the specifications and a note that the timesheet was edited at the appellant's supervisor's request. *Id.* at 125. This form does not display the original entry made by the appellant. *Id.*

The appellant did not dispute that she had verified in Quicktime that she worked 8 hours on the relevant dates even though she had not. Accordingly, I find that the agency established by a preponderance of the evidence that the appellant engaged in conduct exhibiting a lack of candor when she verified that she worked eight hours on each of the days of the workshop. Specifications 2, 3, and 4 are sustained.

Charge 3 is sustained.

The agency proved its charge of Misuse of Government-Owned Vehicle (GOV) by a preponderance of the evidence (Charge 4).

*Specifications 1-3*

The three specifications are as follows:

**Specification 1:** On October 25, 2017, you did not use the GOV to attend the Workshop or for any other official government business.

**Specification 2:** On October 26, 2017, you did not use the GOV to attend the Workshop or for any other official government business.

**Specification 3:** On October 27, 2017, you did not use the GOV to attend the Workshop or for any other official government business, except for your return trip to your permanent duty station.

AF, Tab 12 at 8. To prove the charge of misuse of a government-owned vehicle, the agency must prove the appellant acted either with knowledge that her use of the vehicle would be unofficial or with reckless disregard for whether her use was for unofficial purposes. *Kimm v. Department of the Treasury*, 61 F.3d 888, 891

---

[6] According to the time and attendance records, the appellant used 1.5 hours of annual leave each of the three days. AF, Tab 12 at 125.

(Fed. Cir. 1995); *Gotshall v. Department of the Air Force*, 37 M.S.P.R. 27, 29 (1988).

In her response to the proposed removal, the appellant asserted that she "did conduct government business each day, as [she] attempted to drive to the workshop all three days." AF, Tab 11 at 11. She further argued that "[a] sudden change of plans, I do not believe is misuse of a GOV," given that she made an effort to attend the workshop. *Id*. at 14. In her close of record brief, she argued that she did not misuse the GOV as she had "no choice but to drive back and forth between her home and the workshop everyday (sic), due to her medical condition…" AF, Tab 23 at 19.

It is undisputed that the appellant did not use the GOV to attend the workshop; as previously stated, the appellant admitted that she did not attend the workshop. Driving back and forth between her home and halfway to the workshop is not official government business. To the extent the appellant argued that a sudden change of plans freed her from using a GOV for its designated purpose, the handbook of agency travel procedures the appellant received in 2015 dictates that when a traveler changes her plans and "elects to suspend the official assignment," for instance, if the traveler is sick, she must take leave during the interruption until she is "able to resume official duty." AF, Tab 12 at 61 and 64-65. As discussed in Charge 1, the appellant was absent without leave on the days of the workshop. I therefore find that the appellant was not using the GOV to attend the workshop or for any other official government business and was on notice that the use to which she put the vehicle would not qualify as official government business. I find that the appellant misused the GOV when she failed to use the GOV to attend the workshop during the dates identified in the specifications.

Charge 4 is sustained.

<u>The agency proved its charge of Inappropriate Conduct by a preponderance of the evidence (Charge 5).</u>

*Specifications 1 and 2*

The specifications of this charge arise out of the appellant's conduct following her supervisor's March 8, 2018, offer of accommodations:

> **Specification 1:** According to Office Automation Assistant Patricia Camp, on March 8, 2018, you entered her office and said "My fucking lawyer was awesome. I am fucking getting everything I have been asking that fucking bastard (Tim Breen) for over two fucking years. It is illegal for the things he's been getting away with. But, now I get to do telework 2 days a week.

> **Specification 2:** According to Fish and Wildlife Biologist, Marla Hamilton, on March 8, 2018, while she was at lunch with Fish and Wildlife Biologist, Steve Schubert, you approached them and said, "Dick head is finally giving me everything I have asked for."

AF, Tab 12 at 8-9. The charge of inappropriate conduct has no specific element of proof; it is established by proving that the employee committed the acts alleged in support of the broad label. *Canada v. Department of Homeland Security*, 113 M.S.P.R. 509, ¶ 9 (2010). "Nothing in law or regulation requires an agency to affix a label to a charge of misconduct, and an agency may simply describe actions that constitute misbehavior in narrative form and have its discipline sustained if the efficiency of the service suffers because of the misconduct." *Id.*

The evidence shows that on March 8, 2018, at 11:09 a.m., Breen emailed the appellant letting her know that he was approving her request to telework two days per week (Tuesday and Thursday), on a trial basis for 60 days, if: (1) she accepted the accommodations in addition to the ones offered on November 13, 2017; (2) completed the telework paperwork and had it signed; and (3) obtained a laptop and other necessary equipment. AF, Tab 13 at 31. This email followed email exchanges between the appellant and Breen where she told him he was breaking the law, discriminating against her, and sabotaging and destroying her career. *Id.* at 27-30. The record also included a "Note to File" from Patricia Camp, dated March 9, 2018, stating that the appellant referred to Breen as "that

fucking bastard," stated that she got what she's been asking for, and telling Camp that "[i]t is illegal for the things he's been getting away with." AF, Tab 12 at 138. In a signed letter, Marla Hamilton stated that on March 8, 2018, the appellant approached her and Steve Schubert and told them that "Dick head is finally giving me everything I have asked for . . . Timbo . . . finally realized he is breaking the law by not allowing me to telework." *Id.* at 140.

The appellant asserted that the statements provided by Camp and Hamilton were untrue and erroneous. AF, Tab 23 and 33 at 24. She argued that because she did not "get everything she requested and asked for," she would not have said what Camp and Hamilton stated she did. *Id.* The appellant further argued that text messages on her own cell phone prove that Camp, whose statement is the foundation for Specification 1, was somehow forced by Camp's supervisor to make the statement to Breen about the appellant's actions. AF, Tab 39 at 5.

I find that the agency proved by preponderant evidence that the appellant made the statements as described by Camp and Hamilton. Both employees' description of what the appellant said align with one another and with the timing of Breen's approval of the appellant's request to telework. In sum, I do not find the agency's version of the events of March 8, 2018, inherently improbable or that the appellant's coworkers harbored any motive to fabricate their statements. I find that the appellant's assertion that her coworkers' statements are false to be unpersuasive. The text message the appellant provided from Camp reads, "'I know it doesn't make a difference but I wanted to tell you how sorry I am at how things turned out.'" AF, Tab 40 at 6. The appellant provided additional screenshots of text conversations between herself and coworkers discussing their perceptions of Camp's statement; however, there is nothing in the messages to suggest that Camp lied when she provided her statement to Breen. *Id.* at 4-5. I do not read that implication into the text message conversation. Accordingly, I find that the agency established by a preponderance of the evidence that the appellant engaged in inappropriate conduct on March 8, 2018, after receiving

authorization to telework two days per week on a trial basis. Specifications 1 and 2 are sustained.

Charge 5 is sustained.

Nexus is apparent

An agency may establish nexus by showing that the employee's conduct (1) affected her or her coworkers' job performance; (2) affected management's trust and confidence in the employee's job performance; or (3) interfered with or adversely affected the agency's mission. *Johnson v. Department of Health & Human Services*, 86 M.S.P.R. 501, ¶ 1 (2000), *aff'd*, 18 Fed.Appx. 837 (Fed.Cir. 2001), *aff'd sub nom.*, *Delong v. Department of Health & Human Services*, 264 F.3d 1334 (Fed.Cir.2001), *cert. denied*, 536 U.S. 958 (June 28, 2002).

In this case, there is an obvious relationship between the sustained charges and the efficiency of the service. As a result, I find the agency proved that a nexus exists between the efficiency of the service and the charges of AWOL, failure to follow leave procedures, lack of candor, misuse of government-owned vehicle, and inappropriate conduct.

The agency's chosen penalty does not exceed the bounds of reasonableness.

The agency must establish by preponderant evidence that its choice of penalty does not exceed the bounds of reasonableness. When an agency's charges have been sustained, the Board will review an agency-imposed penalty only to determine if the agency considered all the relevant factors and exercised management discretion within tolerable limits of reasonableness. *Wentz v. United States Postal Service*, 91 M.S.P.R. 176, 183 (2002) (citing *Stuhlmacher v. United States Postal Service*, 89 M.S.P.R. 272 (2001) and *Fowler v. United States Postal Service*, 77 M.S.P.R. 8, 12, *rev. dismissed*, 135 F.3d 773 (Fed. Cir. 1977) (Table)); *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 306 (1981). In determining whether the penalty is reasonable, the Board gives deference to the agency's discretion in exercising its managerial function of maintaining employee

discipline and efficiency, recognizing that the Board's function is not to displace management's responsibility, but to ensure that management judgment has been properly exercised. *Howard v. United States Postal Service*, 72 M.S.P.R. 422, 425 (1996). Thus, where the agency's charge has been sustained, the Board will modify a penalty only when it finds the agency failed to weigh specific *Douglas* factors or that the selected penalty clearly exceeded the bounds of reasonableness. *Parker v. United States Postal Service*, 111 M.S.P.R. 510, ¶ 9 (2009).

In this case, I find that the agency reasonably exercised its discretion and appropriately weighed the *Douglas* factors in concluding that the appellant's conduct warranted removal. In his decision letter, Donald Progulske, the deciding official, described his consideration of the appellant's written response and her attachments as well as information regarding her health issues before adopting the *Douglas* factors analysis completed by the proposing official, Tim Breen, in deciding to remove the appellant. AF, Tab 11 at 5-7. The appellant's misconduct was found to be very serious in that she displayed a lack of candor as to her attendance at the workshop and travel voucher and misuse of a GOV. Her conduct affected management's trust in her ability to do her job, which involves interacting with representatives from various public and private entities. AF, Tab 12 at 9-13. Furthermore, the appellant had previously been issued a Letter of Reprimand for excessive tardiness, AWOL, and unprofessional conduct, as well as a three-day and a five-day suspension for AWOL. *Id*. The appellant's excessive absences and unwillingness to comply with her Leave Restriction were considered to be serious because it resulted in her missing site visits and meetings, and other staff being asked to complete her assignments. While the lack of notoriety of the offense, the appellant's nine years of service, and her anxiety were considered as mitigating factors, they did not outweigh her misconduct as management had lost confidence in the appellant's ability to do her job or be rehabilitated.

The appellant argued that the penalty of removal is too severe. AF, Tab 11 at 9 and Tab 33 at 29-39. Instead, she claimed that a 14-day or 30-day suspension would have been more reasonable. *Id.*

In evaluating a penalty, the Board will consider, first and foremost, the nature and seriousness of the misconduct and its relationship to the employee's duties, position, and responsibilities. *Gaines v. Department of Air Force*, 94 M.S.P.R. 527, ¶ 9 (2003). Based upon Progulske's decision letter, I find that the deciding official reasonably exercised his discretion and appropriately considered the *Douglas* factors in concluding that the appellant's conduct warranted removal. I find that the deciding official gave appropriate weight to the appellant's work history and medical conditions and that his conclusions that the appellant lacked rehabilitative potential and an alternative penalty would be inadequate were reasonable based upon the serious and outrageous nature of the appellant's conduct. The appellant's years of service and the lack of notoriety do not outweigh the fact that she misused a GOV, failed to attend the workshop, and exhibited a lack of candor when she inputted work time she had not worked and failed to be forthcoming about it. I find the appellant's explanation that she was overcome with anxiety and could not attend the workshop is no excuse for her conduct. In addition, I find that the deciding official gave adequate consideration to the appellant's written reply. Accordingly, especially given the serious nature of the appellant's misconduct, I find that the penalty of removal did not exceed the tolerable bounds of reasonableness.[7]

The appellant failed to prove her affirmative defenses by a preponderance of the evidence.

Despite the fact that I have determined that the agency sustained its charges, the Board cannot sustain an agency decision to take an adverse action

---

[7] Pursuant to 31 U.S.C. § 1349(b), the penalty for unauthorized use of a GOV is mandatory, at least a 30-day suspension.

against an employee where the employee proves one of the affirmative defenses set out at 5 U.S.C. § 7701(c)(2). In this appeal, the appellant asserted that she was removed because of her disability and in retaliation for having filed an informal Equal Employment Opportunity (EEO) complaint. AF, Tab 23. While the appellant alleged that she suffers from acute anxiety, a heart condition and other ailments, it is unclear whether she claimed that the agency failed to provide a reasonable accommodation for her medical conditions or that it treated her differently because of her conditions. Accordingly, I have analyzed the appellant's claim under both theories of disability discrimination.

*Disability Discrimination*

As a federal employee, the appellant's disability discrimination claim arises under the Rehabilitation Act of 1973. However, the Equal Employment Opportunity Commission (EEOC) regulations implementing the Americans with Disabilities Act (ADA), as amended by the ADA Amendments Act (ADAAA), have been incorporated by reference into the Rehabilitation Act, and the Board applies them to determine whether there has been a Rehabilitation Act violation. Those regulations are found at 29 C.F.R. Part 1630.

### *Accommodation*

To establish a prima facie case of disability discrimination based on a failure to accommodate, the appellant must show: (a) that she is an individual with a disability under 29 C.F.R. § 1630.2(g) and that the action appealed to the Board was based upon her disability; and (b) that she is a qualified individual with a disability; that is, that she satisfies the requisite skill, experience, education, and other job-related requirements of the position she holds or desires and can perform the essential functions of the position with or without reasonable accommodation. See 29 C.F.R. §§ 1630.2(m), 1630.3. An agency need not provide a reasonable accommodation or a reasonable modification to policies, practices, or procedures to an individual who meets the definition of disability

solely because she is regarded as having a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. § 12201(h).

The appellant may prove that she has a disability by showing that she (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(1), 29 C.F.R. § 1630.2(g)(1),(2),(3). The definition of disability is construed in favor of broad coverage. 42 U.S.C. § 12102(4)(A). A physical or mental impairment is any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, or any mental or psychological disorder. 29 C.F.R. § 1630.2(h). The test for whether a disability substantially limits the ability of an individual to perform a major life activity is applied as compared to most people in the general population. 29 C.F.R. § 1630.2(j)(1)(ii).

In the second method of proving a disability, an individual "has a record of" a disability if she has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities. This may include individuals who were treated for a disease but no longer have it as well as individuals who were misdiagnosed with a substantially limiting impairment even though they did not actually have that impairment. S. Rep. No. 116, 101st Cong., 2d Sess. 23. The impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's major life activities. *Id*. Whether an individual has such a record is to be broadly construed. If the individual has such a record, the agency need not have relied on that record for the individual to be covered under this test.

With regard to the third method of proving disability, an individual meets the requirement of being "regarded as having such an impairment" if she establishes that she has been subjected to a prohibited action because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity. However, the "regarded as" test shall

not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of six months or less. 42 U.S.C. § 12102(3).

The appellant alleged that her ability to work (and arrive at work on time) was affected by anxiety and a heart condition that may have required surgery. AF, Tab 23. Although she did not explain how the anxiety substantially limited one or more major life activities, I assume *arguendo* that the appellant is a qualified individual with a disability because she has the skills, experience, and/or education to hold her position.

An agency must provide reasonable accommodation to the known limitations of a qualified individual with a disability unless to do so would create an undue hardship. *See Simpson v. U.S. Postal Service*, 113 M.S.P.R. 346, ¶ 13 (2010) (citing 42 U.S.C. § 12112(a), (b)(5)(A); *Paris v. Department of the Treasury*, 104 M.S.P.R. 331, ¶ 11 (2006); 29 C.F.R. § 1630.9). Reasonable accommodation may entail modifications to the individual's current position or reassignment to a vacant position. 42 U.S.C. § 12111(9). And, an employer is liable for discriminating against an employee in need of accommodation based upon the employee's known disability. *See Conneen v. MBNA America Bank*, F.3d 318 (3rd Cir. 2003); 42 U.S.C. § 12112(b)(5)(A) (requiring only reasonable accommodations to known disability); *Beck v. University of Wisconsin Board of Regents*, 75 F.3d 1130, 1134 (7th Cir. 1996) (noting initial duty of employee to inform employer of disability is dictated by "common sense lest a disabled employee keep his disability a secret and sue later for failure to accommodate"). While the law does not require any formal mechanism or "magic words" to notify an employer that an employee needs an accommodation, either by direct communication or other appropriate means, the employee "must make clear that [he/she] wants assistance for his or her disability." *Jones v. United Parcel Service*, 214 F.3d 402, 408 (3rd Cir. 2000).

According to the appellant, she first requested to telework as a reasonable accommodation prior to March 2015. AF, Tab 23 at 11. That request was denied, and in August 2017, she again requested a reasonable accommodation. AF, Tab 13 at 5-19 and Tab 23 at 11-13. After the appellant provided medical documentation in which her doctor recommended a flexible schedule including potential telework, the offer of accommodations was formalized on November 13, 2017, and included a flexible schedule and break times. *Id*.

The evidence established that the appellant requested a reasonable accommodation for anxiety around October 2017, at which point the agency made every effort to accommodate the appellant, including offering extra time for her to gather medical documentation, offering to amend her leave restriction and institute a gliding start time even prior to receiving the requisite medical documentation. AF, Tab 13 at 9 and 17. The appellant declined these agency efforts. *Id.* at 17. As a result, I find the agency did not fail to reasonably accommodate the appellant's disability.

### *Disparate Treatment*

An appellant may also establish a prima facie case of disability discrimination under a disparate treatment theory by showing that she (1) is a member of a protected class; (2) suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. Here, the agency has articulated nondiscriminatory reasons for its action. Thus, the inquiry proceeds directly to the ultimate question of whether, upon weighing all of the evidence, the appellant has met her overall burden of proving discrimination. *See Gregory v. Department of the Army*, 114 M.S.P.R. 607, ¶ 40 (2010). The Board has held that a mixed motive analysis is appropriate in disability discrimination claims arising under the ADAAA and that the appellant need not prove that but for the discrimination, the action would not have been taken. *See Southerland v. Department of Defense*, 119 M.S.P.R. 566, ¶ 21 (2013). Under a mixed-motive analysis, an employee is entitled to some relief if she proves that her disability

was "a motivating factor" in the decision, "even though other factors also motivated the practice." *Id.*, ¶ 23 (citing 42 U.S.C. §§ 2000e-2(m), 2000e-5(g)(1)); *see also Forte v. Department of the Navy*, 123 M.S.P.R. 124, ¶ 27 (2016). An agency may limit the extent of the remedy if it demonstrates by clear and convincing evidence that it "would have taken the same action in the absence of the impermissible motivating factor." *Southerland*, 119 M.S.P.R. 566, ¶¶ 23-25 (citing 42 U.S.C. § 2000e-5(g)(2)(B)).

While the appellant made conclusory statements asserting her belief she was discriminated against, she failed to provide any evidence that her anxiety or any other disability was a motivating factor in the agency's decision. Based on my review of the entire record, I find that the appellant did not establish that her disability was a motivating factor in her removal. While she made it clear that she felt her supervisor, Breen, discriminated against her, the appellant did not allege that the deciding official, Progulske, or either of her coworkers who provided statements to substantiate the inappropriate conduct charge (Camp and Hamilton) discriminated against her. AF, Tab 23. The appellant presented no direct evidence of discriminatory animus, nor has she provided circumstantial evidence of discrimination, such as: similarly situated nondisabled employees who were treated more favorably; that the agency lied about its reason for removing her; that the agency's explanation was inconsistent; that the agency failed to follow its established procedures; that the agency generally treats disabled employees less favorably; or incriminating statements. Rather, I find that the agency's removal action was taken solely in response to the appellant's misconduct. Therefore, I find she did not prove that the agency discriminated against her based on her disability under a disparate treatment theory.

*Retaliation for protected activity*

The appellant's claim of reprisal based on EEO activity is an allegation of a prohibited personnel practice under 5 U.S.C. § 2302(b)(1). Federal employees are protected against discrimination based on race, color, sex, religion, and

national origin, as well as retaliation for the exercise of Title VII rights, by 42 U.S.C. § 2000e-16. *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 36-37 (2015). The Board has held that a violation is established where the appellant shows that discrimination or retaliation "was a motivating factor in the contested personnel action, even if it was not the only reason." *Id.*, ¶ 41. To establish a prima facie case of retaliation for engaging in protected activity, the appellant must show that: (a) she engaged in protected activity; (b) the accused official(s) knew of the protected activity; (c) the adverse employment action under review could, under the circumstances, have been retaliation; and (d) there was a genuine nexus between the retaliation and the adverse employment action. *See Warren v. Department of the Army*, 804 F.2d 654, 656-58 (Fed. Cir. 1986); *Cloonan v. United States Postal Service*, 65 M.S.P.R. 1, 4 (1994). To establish a genuine nexus between the protected activity and the adverse employment action, the appellant must prove that the employment action was taken because of the protected activity. *Cloonan*, 65 M.S.P.R. at 4, n.3.

In support of her affirmative defense, the appellant alleged that she engaged in protected EEO activity when she notified her supervisors on January 12, 2015, of allegations of sexual harassment against a co-worker and when she was a witness in another employee's complaint. AF, Tab 23 at 5-6 and Tab 25 at 94-95. The agency considered this to be an "informal EEO complaint." AF, Tab 22 at 35. On February 3, 2015, she gave her supervisor a written statement of what had happened and requested a move to another office in a different building, away from her alleged harasser. AF, Tab 19 at 77-78. Breen later facilitated this move for her; he provided the appellant with information about making a formal complaint and options for elevating the issue but the appellant declined to formalize the complaint. AF, Tab 24 at 25-28. The agency stated that in terms of the appellant being a witness in another matter, it "is not aware of any allegation of sexual harassment against John Galvez by Shana DiPalma," and the appellant has declined to provide evidence that the deciding official was aware she had

been a witness in another EEO complaint. AF, Tab 25 at 94-95. While it is evident that Breen, the proposing official whose analysis the deciding official adopted, knew about the protected activity the appellant had engaged in with regard to the "informal EEO complaint," the adverse action took place more than three years later following wrongdoing by the appellant. Further, the support that Breen provided to the appellant after she made the allegation demonstrated that he wanted to support the appellant and not punish her for what happened. On these facts, I find that the appellant failed to show a genuine nexus between her protected activity and her removal. I further find that the appellant failed to show that the agency was aware she was a witness in any other EEO proceeding. Accordingly, I find that the appellant failed to prove she was removed in retaliation for having participated in any protected activity.

## DECISION

The agency's action is AFFIRMED.

FOR THE BOARD:
_____/S/_____
Silvia de la Cruz
Administrative Judge

## NOTICE TO APPELLANT

This initial decision will become final on **December 23, 2019**, unless a petition for review is filed by that date. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. If you are represented, the 30-day period begins to run upon either your receipt of the initial decision or its receipt by your representative, whichever comes first. You must establish the date on which you or your representative received it. The date on which the initial

decision becomes final also controls when you can file a petition for review with one of the authorities discussed in the "Notice of Appeal Rights" section, below. The paragraphs that follow tell you how and when to file with the Board or one of those authorities. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review.

If the other party has already filed a timely petition for review, you may file a cross petition for review.  Your petition or cross petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record.  You must file it with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.
Washington, DC 20419

A petition or cross petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing.  A petition submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

## NOTICE OF LACK OF QUORUM

The Merit Systems Protection Board ordinarily is composed of three members, 5 U.S.C. § 1201, but currently there are no members in place.  Because a majority vote of the Board is required to decide a case, *see* 5 C.F.R. § 1200.3(a), (e), the Board is unable to issue decisions on petitions for review filed with it at this time.  *See* 5 U.S.C. § 1203.  Thus, while parties may continue to file petitions for review during this period, no decisions will be issued until at least two members are appointed by the President and confirmed by the Senate.  The lack of

a quorum does not serve to extend the time limit for filing a petition or cross petition. Any party who files such a petition must comply with the time limits specified herein.

For alternative review options, please consult the section below titled "Notice of Appeal Rights," which sets forth other review options.

### **Criteria for Granting a Petition or Cross Petition for Review**

Pursuant to 5 C.F.R. § 1201.115, the Board normally will consider only issues raised in a timely filed petition or cross petition for review. Situations in which the Board may grant a petition or cross petition for review include, but are not limited to, a showing that:

(a) The initial decision contains erroneous findings of material fact. (1) Any alleged factual error must be material, meaning of sufficient weight to warrant an outcome different from that of the initial decision. (2) A petitioner who alleges that the judge made erroneous findings of material fact must explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error. In reviewing a claim of an erroneous finding of fact, the Board will give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing.

(b) The initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case. The petitioner must explain how the error affected the outcome of the case.

(c) The judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case.

(d) New and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. To constitute new evidence, the information contained in the documents, not just the

documents themselves, must have been unavailable despite due diligence when the record closed.

As stated in 5 C.F.R. § 1201.114(h), a petition for review, a cross petition for review, or a response to a petition for review, whether computer generated, typed, or handwritten, is limited to 30 pages or 7500 words, whichever is less. A reply to a response to a petition for review is limited to 15 pages or 3750 words, whichever is less. Computer generated and typed pleadings must use no less than 12 point typeface and 1-inch margins and must be double spaced and only use one side of a page. The length limitation is exclusive of any table of contents, table of authorities, attachments, and certificate of service. A request for leave to file a pleading that exceeds the limitations prescribed in this paragraph must be received by the Clerk of the Board at least 3 days before the filing deadline. Such requests must give the reasons for a waiver as well as the desired length of the pleading and are granted only in exceptional circumstances. The page and word limits set forth above are maximum limits. Parties are not expected or required to submit pleadings of the maximum length. Typically, a well-written petition for review is between 5 and 10 pages long.

If you file a petition or cross petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. A petition for review must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you or your representative more than 5 days after the date of issuance, 30 days after the date you or your representative actually received the initial decision, whichever was first. If you claim that you and your representative both received this decision more than 5 days after its issuance, you have the burden to prove to the Board the earlier date of receipt. You must also show that any delay in receiving the initial decision was not due to the deliberate evasion of receipt. You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (*see* 5

C.F.R. Part 1201, Appendix 4) to support your claim.  The date of filing by mail is determined by the postmark date.  The date of filing by fax or by electronic filing is the date of submission.  The date of filing by personal delivery is the date on which the Board receives the document.  The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service.  Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party.  *See* 5 C.F.R. § 1201.4(j).  If the petition is filed electronically, the online process itself will serve the petition on other e-filers.  *See* 5 C.F.R. § 1201.14(j)(1).

A cross petition for review must be filed within 25 days after the date of service of the petition for review.

### NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

### NOTICE OF APPEAL RIGHTS

You may obtain review of this initial decision only after it becomes final, as explained in the "Notice to Appellant" section above.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this decision when it becomes final, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

(1) **Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be _received_ by the court within **60 calendar days** of _the date this decision becomes final_. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you _only_ if you have claimed that you

were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after this decision becomes final</u> under the rules set out in the Notice to Appellant section, above.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after this decision becomes final</u> as explained above.  5 U.S.C. § 7702(b)(1).

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

(3) **Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and you wish to challenge the Board's rulings on <u>your whistleblower claims only, excluding all other issues</u>, then you may file a petition for judicial review with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.   The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date this decision becomes final</u> under the rules set out in the Notice to Appellant section, above.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx

## CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

<u>Appellant</u>

Electronic Mail

Delta Danielle Harris
405 Autumn Terrace
Sebastian, FL 32958

<u>Agency Representative</u>

Electronic Mail

Cecelia Townes
Department of the Interior
75 Spring Street SW
Suite 304
Atlanta, GA 30303

| November 18, 2019 | /s/ |
|---|---|
| (Date) | JoAnn Atkinson |
| | Paralegal Specialist |

**DELTA DANIELLE HARRIS,**
*Petitioner*

**v.**

**DEPARTMENT OF THE INTERIOR,**
*Respondent*

**Federal Circuit Docket No.:** 2020-1522

March 12, 2020

# Motion for Extension

Petitioner received a Notice of Docketing from the United States Court of Appeal for the Federal Circuit on Saturday March 7, 2020 dated March 3, 2020.

Petitioner also received an Index List from the U.S. Merit Systems Protection Board, on Friday March 6, 2020, dated March 3, 2020.

According to the above letters received Petitioner is required to meet the following deadlines:

Form 10 -- Statement Concerning Discrimination is due March 17, 2020

Form 11 -- Informal Brief due March 24, 2020

The Petitioner respectfully asks the Court for a 30-day extension to the above deadlines.

The Petitioner requests this extension for two reasons: 1) Petitioner recently had a major surgery on March 5, 2020 and is recovering and 2) The Petitioner is currently working on an EEOC case deadline that has already been extended due to the surgery and must meet that deadline. The recovery process is profoundly causing setbacks which delay my proficiency.

The Petitioner is not qualified to represent herself and is without representation. Thus, the Petitioner needs extensive time to study, prepare, and understand the documentation that is required in the above submittals. The extension of 30-days will allow the Petitioner adequate time to properly file the documentation listed above.

Respectfully submitted,

Delta Harris

**DELTA DANIELLE HARRIS,**
*Petitioner*

v.

**DEPARTMENT OF THE INTERIOR,**
*Respondent*

**Federal Circuit Docket No.:** 2020-1522

March 12, 2020

**AMENDED**: This document was amended and resubmitted to include the Certificate of Service page and sent to the Respondent March 17, 2020.

## Motion for Extension

Petitioner received a Notice of Docketing from the United States Court of Appeal for the Federal Circuit on Saturday March 7, 2020 dated March 3, 2020.

Petitioner also received an Index List from the U.S. Merit Systems Protection Board, on Friday March 6, 2020, dated March 3, 2020.

According to the above letters received Petitioner is required to meet the following deadlines:

Form 10 -- Statement Concerning Discrimination is due March 17, 2020

Form 11 -- Informal Brief due March 24, 2020

The Petitioner respectfully asks the Court for a 30-day extension to the above deadlines.

The Petitioner requests this extension for two reasons: 1) Petitioner recently had a major surgery on March 5, 2020 and is recovering and 2) The Petitioner is currently working on an EEOC case deadline that has already been extended due to the surgery and must meet that deadline.  The recovery process is profoundly causing setbacks which delay my proficiency.

The Petitioner is not qualified to represent herself and is without representation. Thus, the Petitioner needs extensive time to study, prepare, and understand the documentation that is required in the above submittals. The extension of 30-days will allow the Petitioner adequate time to properly file the documentation listed above.

Respectfully submitted,

Delta Harris

CERTIFICATE OF SER  ICE

I hereby certify that that attached Documents were sent to as indicated to each of the following:


Electronically mailed:        Clerk of the Court
                              United States Court of Appeals for the Federal Circuit
                              prose_cafc.uscourts.gov
                              Originally Submitted: March 12, 2020


Electronically mailed:        <u>Respondent</u>
                              Director
                              Commercial Litigation Branch
                              Civil Division
                              U.S. Department of  ustice
                              natcourts.appeals_usdoj.gov
                              natcourts.dockets_usdoj.gov
                              national.courts_usdoj.gov

NOTE: This order is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

————————————

**DELTA DANIELLE HARRIS,**
*Petitioner*

**v.**

**DEPARTMENT OF THE INTERIOR,**
*Respondent*

————————————

2020-1522

————————————

Petition for review of the Merit Systems Protection
Board in No. AT-0752-19-0427-I-1.

————————————

## ON MOTION

————————————

## O R D E R

Upon consideration of Delta Danielle Harris's motion
to extend by 30 days the time to file her Statement Concerning Discrimination and her informal opening brief,

IT IS ORDERED THAT:

The motion is granted to the extent that Ms. Harris's
Statement Concerning Discrimination and her informal
opening brief are due no later than April 30, 2020.

2                                        HARRIS v. INTERIOR

FOR THE COURT

<u>March 18, 2020</u>            /s/ Peter R. Marksteiner
Date                             Peter R. Marksteiner
                                 Clerk of Court

s31

Form 8

**FORM 8. Entry of Appearance**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

DELTA DANIELLE HARRIS     v.     DEPARTMENT OF THE INTERIOR

No. 20-1522

## ENTRY OF APPEARANCE

(INSTRUCTIONS: Counsel should refer to Federal Circuit Rule 47.3. Pro se petitioners and appellants should read paragraphs 1 and 18 of the Guide for Pro Se Petitioners and Appellants. File this form with the clerk within 14 days of the date of docketing and serve a copy of it on the principal attorney for each party.)

Please enter my appearance (select one):

___ Pro Se       ☑ As counsel for:     DEPARTMENT OF THE INTERIOR
                                         Name of party

I am, or the party I represent is (select one):

☐ Petitioner    ☑ Respondent    ☐ Amicus curiae    ☐ Cross Appellant

☐ Appellant     ☐ Appellee      ☐ Intervenor

As amicus curiae or intervenor, this party supports (select one):

☐ Petitioner or appellant       ☐ Respondent or appellee

My address and telephone are:

| | |
|---|---|
| Name: | Borislav Kushnir |
| Law firm: | United States Department of Justice, Commercial Litigation Branch |
| Address: | PO Box 480, Ben Franklin Station |
| City, State and ZIP: | Washington, DC 20044 |
| Telephone: | (202) 307-5928 |
| Fax #: | (202) 353-0461 |
| E-mail address: | Steven.Kushnir@usdoj.gov |

Statement to be completed by counsel only (select one):

☑ I am the principal attorney for this party in this case and will accept all service for the party. I agree to inform all other counsel in this case of the matters served upon me.

☐ I am replacing _____ as the principal attorney who will/will not remain on the case. [Government attorneys only.]

☐ I am not the principal attorney for this party in this case.

Date admitted to Federal Circuit bar (counsel only): _____

This is my first appearance before the United States Court of Appeals for the Federal Circuit (counsel only):

☐ Yes    ☑ No

☐ A courtroom accessible to the handicapped is required if oral argument is scheduled.

| March 20, 2020 | /s/ Borislav Kushnir |
|---|---|
| Date | Signature of pro se or counsel |

cc: Delta Danielle Harris _____

Reset Fields

123

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on this  <u>20th</u>  day of

<u>          March          </u>,  <u>   2020   </u>, a copy of the foregoing

<u>                              Entry of Appearance                              </u>

was filed electronically.

☐  This filing was served electronically to all parties by operation of the Court's

electronic filing system.

<u>                                            </u>

☑  I caused a copy of this filing to be served via:

☐  hand delivery

☑  mail

☐  third-party commercial carrier for delivery within 3 days

☐  electronic means, with the written consent of the party being served

To the following address:

> Delta Danielle Harris
> 405 Autumn Terrace
> Sebastian, FL 32958

<u>          /s/ Borislav Kushnir          </u>

FORM 10. Statement Concerning Discrimination

Form 10
Rev. 03/16

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

_Harris_    v.    _Interior_

No. _2020-1522_

## PETITIONER'S FED. CIR. R. 15(c) STATEMENT CONCERNING DISCRIMINATION

### Please complete sections A, B, and C.

**Section A:** _N/A See attached_

Check the statements below that apply to your case. Usually, it is one statement, but it may be more. Do not alter or add to any of the statements.

☐ (1) No claim of discrimination by reason of race, sex, age, national origin, or handicapped condition has been or will be made in this case.

☐ (2) Any claim of discrimination by reason of race, sex, age, national origin, or handicapped condition raised before and decided by the Merit Systems Protection Board or arbitrator has been abandoned or will not be raised or continued in this or any other court.

☐ (3) The petition seeks review only of the Board's or arbitrator's dismissal of the case for lack of jurisdiction or for untimeliness.

☐ (4) The case involves an application to the Office of Personnel Management for benefits.

☐ (5) The case was transferred to this court from a district court and I continue to contest the transfer.

**Section B:**

Answer the following: Have you filed a discrimination case in a United States district court from the Board's or arbitrator's decision? ☐ Yes ☒ No  If yes, identify any case.

**Section C:**

Answer the following: Have you filed a discrimination case in the Equal Employment Opportunity Commission from the Board's or arbitrator's decision? ☐ Yes ☒ No  If yes, identify any case.

_See attached for further explanation_

_3/17/20_
Date

_[signature]_
Petitioner's signature

Mail this form with the petition for review or within 14 days of the date of docketing of the petition for review to:

Clerk of Court
United States Court of Appeals for the Federal Circuit
717 Madison Place, NW
Washington, DC 20439

cc: _____

Reset Fields

**DELTA DANIELLE HARRIS,**
*Petitioner*

v.

**DEPARTMENT OF THE INTERIOR,**
*Respondent*

**Federal Circuit Docket No.:** 2020-1522

March 17, 2020

FORM 10: Supplemental Attachment

## <u>Statement Concerning Discrimination</u>

<u>**NOTE**</u>: Petitioner submitted a *Motion for Extension* of time on March 12, 2020 (attached). As of today, Petitioner has not received confirmation to that Motion. Thus, Petitioner is submitting the *Statement Concerning Discrimination Form 10* in lieu of a granted extension.

### <u>Section A</u>

**Not Applicable:** Statements 1 through 5 do not apply to the Petitioner's case.

### <u>Section C</u>

Petitioner's response: NO

The Petitioner is currently involved in a different case with the Equal Employment Opportunity Commission involving the Department of the Interior.

EEOC No. 510-2018-X-00306X      *Complainant was discriminated against and subjected to a hostile work environment based on disability (adverse actions and failure to provide reasonable accommodations), reprisal (two incidents of opposition of discrimination, denied reasonable accommodations which were requested since 2015), prior sexual harassment complaint, and ongoing EEO activity, prior sexual harassment claim and disparate treatment.*

Respectfully submitted,

Delta Harris



DELTA

405 AUTUM TER

Sebastian FL 32958

7019 1120 0001 8260 9180

U.S. POSTAGE PAID
FCM LETTER
VERO BEACH FL
32960
MAR 17 20
AMOUNT

$6.95

R2304W115425-13

1025    20439

RECEIVED

MAR 23 2020

United States Court of Appeals
For The Federal Circuit

Clerk of Court
US Court of Appeals

717   Madison PL NW

Wash   D.C.   20439

# DELTA DANIELLE HARRIS,

*Petitioner*

## V.

# DEPARTMENT OF THE INTERIOR,

*Respondent*

**Federal Circuit Docket No.:** 20-1522

April 8, 2020

## Motion Requesting Supplemental Evidence to the Record

The Petitioner, Delta Danielle Harris, respectfully requests to submit supplemental evidence from the previously filed wrongful termination EEO Formal Administrative Record pertaining to this case to be added to the Court of Appeals record, specifically, the Report of Investigations.

As instructed by the Department of the Interior's policy and procedure, the Petitioner followed the Federal Sector EEO Formal complaint process regarding her wrongful termination. Since the complaint is a 'mixed-case', the Petitioner elected for MSPB review.

The Petitioner's Administrative Complaint Record is missing from the MSPB's record.

It was not known to the Petitioner, until recently, that the Agency's EEO Administrative Complaint Records pertaining to the Petitioners wrongful termination was not provided and included into the MSPB's records.

The Petitioner's EEO Administrative Complaint Record is imperative to this case and is the premise to the Petitioner's defense.

Respectfully requested,

Delta Harris

Certificate of Service

I certify that this Motion was sent via email, on April 8, 2020, to the following recipients:

U.S. Court of Appeals of the Federal Circuit

prose@cafc.uscourts.gov

United States Department of Justice, Commercial Litigation Branch

Steven Kushnir

Steven.Kushnir@usdoj.gov

# DELTA DANIELLE HARRIS,

*Petitioner*

## V.

# DEPARTMENT OF THE INTERIOR,

*Respondent*

**Federal Circuit Docket No.:** 20-1522

April 8, 2020

## Motion to Su mit Documents  rom the MSP  Listed Inde

The Petitioner, Delta Danielle Harris, respectfully requests to submit the documents she provided to the MSPB that are listed in the MSPB's Listed Index.

These documents are imperative to this case and is the premise to the Petitioner's defense.

Respectfully requested,

Delta Harris
deltaharris  @gmail.com

Certificate of Service

I certify that this Motion was sent via email, on April 8, 2020, to the following recipients:


U.S. Court of Appeals of the Federal Circuit

prose@cafc.uscourts.gov

United States Department of Justice, Commercial Litigation Branch

Steven Kushnir

Steven.Kushnir@usdoj.gov

# DELTA DANIELLE HARRIS,

*Petitioner*

## v.

# DEPARTMENT OF THE INTERIOR,

*Respondent*

**Federal Circuit Docket No.:** 20-1522

April 12, 2020

## Motion Requesting EEOC Case as Supplemental Evidence to the Record

   **AC   RO  ND**   On January 12, 2015, Petitioner informed her new  Oct 201
Supervisor Mr. Tim Breen  Breen  of the sexual harassment from a co-worker, Mr. John
   alve      alve  .  Subsequently, Breen and Agency Management discriminated against
Petitioner and subjected her to reprisal for two incidents of opposition to discrimination
for reporting sexual harassment by    alve  , and requesting reasonable accommodations.
Additional, Breen and Agency management created a hostile work environment based on
gender, and medical disability issues.  Breen and Agency Management knew about
medical disability issues the Petitioner was experience at the time they were creating the
hostile work environment.  Based upon Breen and Agency Management activities against
Petitioner and subsequent reprisal, the Petitioner suffered adverse actions and denied
reasonable accommodations and experienced disparate treatment this ultimately lead to

Petitioner's removal from Federal Service.

The Petitioner graduated with honors, Cum Laude, from the University of Florida with a degree in Environmental Management and later earned a Masters Certificate in Sustainable Land Management Resources.    ith almost 10 years of Service, the Petitioner had a stellar career, with above average performance reviews and rewards.   It was not until she notified management of sexual harassment and subsequent health issues that adverse actions were taken against her which led the filing a formal EEOC discrimination compliant.

### *Interior's Work Environment Survey Results*

 e ret r  in e   s or   t re   n e  t nterior
RP      R      R P

 i     e ret r R  n  n e

 o   ont s  o    ent to t e  r  nd   n on to spe   to o r
e  p o ees o t e   tion  P r  er i e  _ter  e re e sed   s r e_
_on   r ss  ent in t e  or p   e_

 o  tod    e  re t  in t e ne t step  nd re e sin  t e res ts o
  ep rt ent  ides r e  on t  e s   e topi

 t s i e to    no ed e   t  e   e Pro e

### *Unfortunately, the survey shows that harassment, intimidation, and discrimination have been a common practice at Interior….*

  spe  in tod  to    e it  e r t  t t e  t re o   r ss  ent
 nd inti  id tion    s  o e to   n end

  e  re d re  o ed o r senior e ders t t  ere   i t o
in ppropri te  e  ior  nd   i re o e o r  ndred  ore i
 ne  ess r

 nti  id tion   r ss  ent  nd dis ri  in tion is    n er to n
or  ni  tion  o  er deep it  oes   e  i re o e it ro
 nterior

 o one  t  nterior s o  d   e to s   er si ent    r id o
ret  i tion or iso  tion    en t e re  st tr in  to do t eir o

### *…In The Past, The Words "Zero Tolerance" Have Been An Empty Promise.*

***While Past Leaders at Interior Have Said the Right Things,
There Was Very Little If Any Action.***

   o    e    e   nterior  i  no  on  er prote t pred tors or    ept
in  ppropri  te    ior

   ep  t  e ret r   ern  rd t  nd    e dire ted t   e      re
 e  d  de ops n   tion p  n or stoppin    r ss ent  nd ens  re
t  t  e ri   t
reso  r es  re    i   e or e er e p o ee

   o    e e perien ed   r ss ent or dis ri  in tion p e se  o
to       o e p o ees   ere t ere s    riet o  reso  r es
 s e  s    s r e res ts   i   e

Pe  se  i  o  see so  et in  t  t s not ri  t don t i nore it
t s e er one s responsi  i it  to t   e  st nd nd ed
ro  t e  ront

   o    itted to endin   r ss ent nd t e  ept  e ret r   nd
 i  ontin e to  eep o    pd ted on  tions t  en in t e  ee s
 nd  ont s to  o e

  is is t e st rt o     t r    n e t  e
 ep rt ent o t e  nterior  nd  e need  o   r  e p

M   o  is si  p e    nt  nterior to  e t e  est possi  e p   e
to  or  in t e  o ern ent   e   e no   ission  e
   e  re t  nd p  ssion te peop e  nd   e    s te       n
end  r ss ent  nd inti  id tion

   n   o    nd  od  ess

Source: *ttps*    *doi  o  e p o ees interiors   or  en iron ent s  re res ts*

The Petitioner is currently involved in an EEOC discrimination case:   o. 510-2018-00 0   . This case was filed during her employment with the U.S. Fish         ildlife Service  F  S   and after much delay is finally being processed.

The case is the prelude of the discrimination and retaliation which led to her wrongful termination.

The Agency violated numerous Federal laws and Department of the Interior  F   S policies and procedure regarding sexual harassment, reprisal, discrimination, and reasonable accommodations.

Since her termination, the Petitioner suffered unnecessary events to her wrongful termination: i.e. homelessness, loss of vehicle, and financial stability for survival.

The Petitioner, Delta Danielle Harris, respectfully requests to submit supplemental evidence from the previously filed EEO Formal complaint which is currently in judicial review.

Evidence the Petitioner requests to supplement the record are as follows:

1. Report of Investigations,
2. All medical records provided to the Agency,
. Blue Cross    Blue Shield Patient Report listing office visits 2015-2018,
. Email correspondences between the Petitioner and Agency, and
5. Agency MSPB Discovery responses.

The Petitioner's EEO Administrative Complaint Record is imperative to this case and is the premise to the Petitioner's defense.  The Petitioner is not an attorney and not qualified to represent herself. The information was not previously included due to the fact the Petitioner was unaware this information could have been submitted.

Respectfully requested,

Delta Harris

Certificate of Service

 I certify that this Motion was sent via email, on April 1  , 2020, to the following recipients:

U.S. Court of Appeals of the Federal Circuit

prose@cafc.uscourts.gov

United States Department of Justice, Commercial Litigation Branch

Steven Kushnir

Steven.Kushnir@usdoj.gov

NOTE: This order is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

—————————————

**DELTA DANIELLE HARRIS,**
*Petitioner*

**v.**

**DEPARTMENT OF THE INTERIOR,**
*Respondent*

—————————————

2020-1522

—————————————

Petition for review of the Merit Systems Protection Board in No. AT-0752-19-0427-I-1.

—————————————

PER CURIAM.

## O R D E R

The court considers its jurisdiction over this petition for review.

Delta Danielle Harris appealed to the Merit Systems Protection Board from her removal from the Department of the Interior. The administrative judge's initial decision affirmed the removal and rejected Ms. Harris's affirmative defenses, which included disability discrimination. Ms. Harris then petitioned for this court's review.

Although this court possesses jurisdiction to review certain decisions of the Board, 5 U.S.C. § 7703(b)(1)(A), in

2                                          HARRIS v. INTERIOR

cases involving discrimination claims, the appropriate fo-
rum for review is the district court, 5 U.S.C. § 7703(b)(2);
*Perry v. Merit Sys. Prot. Bd.*, 137 S. Ct. 1975, 1985 (2017).
Ms. Harris's filings with this court indicate that she in-
tends to pursue her discrimination claims.

Accordingly,

IT IS ORDERED THAT:

(1)  Within 30 days from the filing of this order, the par-
ties are directed to show cause why this case should not be
transferred to a United States district court, and which
court would be most appropriate.

(2)  The briefing schedule is stayed.

FOR THE COURT

April 21, 2020          /s/ Peter R. Marksteiner
     Date               Peter R. Marksteiner
                        Clerk of Court

s31

**DELTA DANIELLE HARRIS,**
*Petitioner*


**v.**


**DEPARTMENT OF THE INTERIOR,**
*Respondent*


**Federal Circuit Docket No.:** 2020-1522
April 2 , 2020


<u>Res once to Order to Transfer Case to   nited States District Court</u>


**On A ril  ,   , t e Petitioner, Delta Danielle Harris, received Order fro   t e   nited States Court of A   eals for t e Federal Circuit  Court of A   eals orderin  t e   arties to s o  cause to      t is case s ould not  e transferred to t e   nited States district court and to identif    ic court  ould  e  ost a  ro riate.**


**T e Petitioner intends to   ursue   er discri  ination clai  s. T e Petitioner concurs   it t e Court of A   eals to transfer t e case to t e   nited States district court. T e Petitioner advises t e Court of A   eals transfer t e case to t e   nited States District Court Sout ern District of Florida.**


**T ank  ou,**


**Delta Harris**

Certificate of Service


 I certify that this Motion was sent via email, on April 2 , 2020, to the following
recipients:


     U.S. Court of Appeals of the Federal Circuit

       prose   cafc.uscourts.gov

     United States Department of  ustice, Commercial Litigation Branch

       Steven   ushnir

       Steven.  ushnir   usdoj.gov

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

| | | |
|---|---|---|
| DELTA DANIELLE HARRIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2020-1522 |
| | ) | |
| DEPARTMENT OF THE INTERIOR, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## RESPONDENT'S RESPONSE TO ORDER TO SHOW CAUSE

On April 21, 2020, the Court issued an order noting that petitioner, Delta Danielle Harris, alleged an affirmative defense of discrimination before the Merit Systems Protection Board (MSPB or board), and that "Ms. Harris's filings with this court indicate that she intends to pursue her discrimination claims." ECF No. 12 at 1-2. The Court directed the parties to "show cause why this case should not be transferred to a United States district court," and inquired "which court would be most appropriate." *Id.* at 2. In response to the Court's order, respondent, the Department of the Interior (Interior), states that this Court does not possess jurisdiction over this "mixed case." Because no district court possesses jurisdiction over this matter either, the Court should dismiss the case in lieu of transferring it to a district court.

The Supreme Court has defined a "mixed case" as one in which "an employee complains of a personnel action serious enough to appeal to the MSPB *and* alleges that the action was based on discrimination." *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012) (emphasis in original). *See also Perry v. Merit Sys. Prot. Bd.*, 137 S. Ct. 1975, 1980 (2017); 29 C.F.R. § 1614.302(a)(2) (2016). Whether such a "mixed case" is decided on the merits, on procedural grounds, or for lack of jurisdiction, the proper forum for judicial review is a United States district court, pursuant to 5 U.S.C. §§ 7702 and 7703. *See Perry*, 137 S. Ct. at 1981-82, 1985. This Court possesses jurisdiction to review an adverse action in a "mixed case" only if the petitioner abandons any claim of discrimination raised before the board. *Diggs v. Dep't of Hous. & Urban Dev.*, 670 F.3d 1353, 1355 n.2 (Fed. Cir. 2011) (citing Fed. Cir. R. 15(c)).

Ms. Harris held the position of Fish and Wildlife Biologist within Interior's South Florida Ecological Services Office in Vero Beach, Florida. Initial Decision at 2, ECF No. 3. She was removed from this position on April 20, 2018, for absence without leave, failure to follow leave procedures, lack of candor, misuse of a Government-owned vehicle, and inappropriate conduct. *Id.* at 3. Ms. Harris appealed her removal to the board, and argued, in part, that Interior discriminated against her on the basis of a disability. *Id.* at 19-24. The board rejected Ms. Harris's affirmative defense, and affirmed her removal. *See id.*

2

Ms. Harris then appealed the board's decision to this Court.  In her statement concerning discrimination, Ms. Harris informed the Court that she continues to pursue her disability discrimination claim through a pending complaint to the Equal Employment Opportunity Commission (EEOC).  ECF No. 8.  And in response to the Court's order to show cause, Ms. Harris made clear that she "intends to pursue her discrimination claims."  ECF No. 13.  Because Ms. Harris has not abandoned her claim of disability discrimination, this Court lacks jurisdiction over her "mixed case."  *See Kloeckner*, 568 U.S. at 44; *Perry*, 137 S. Ct. at 1980; *Diggs*, 670 F.3d at 1355 n.2.

The remaining question is whether the Court should transfer the case to a United States district court.  If this Court "finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed."  28 U.S.C. § 1631.  "It is well settled that transfer of a case to another court is only permissible if the destination court has subject matter jurisdiction to hear the case."  *Alvarado Hosp., LLC v. Price*, 868 F.3d 983, 990 (Fed. Cir. 2017).  The destination court's jurisdiction is thus the "crucial inquiry" when deciding whether a case should be transferred pursuant to 28 U.S.C. § 1631. *Id.*

3

In a "mixed case," an employee may seek district court review of the board's decision with respect to the underlying personnel action and the claim of discrimination. *See* 5 U.S.C. § 7703(b)(2). But in the event the employee files a complaint with the EEOC, the board's decision "shall be a judicially reviewable action as of . . . the date the [EEOC] determines not to consider the decision . . ." 5 U.S.C. § 7702(a)(3)(B). In other words, if the employee files a complaint with the EEOC, and that complaint remains pending before the EEOC, the board's decision is not yet reviewable by a district court.

In response to the Court's order to show cause, Ms. Harris advised that the case should be transferred to the United States District Court for the Southern District of Florida. *See* ECF No. 13. But because the EEOC had not resolved her complaint when she filed this appeal (and, in fact, that EEOC complaint remains pending today), that district court does not have subject-matter jurisdiction over this case. *See* 5 U.S.C. § 7702(a)(3)(B). The Court should thus dismiss the case in lieu of transferring it to a district court. *See* 28 U.S.C. § 1631; *Alvarado Hosp.*, 868 F.3d at 990.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the case.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

/s/ Claudia Burke
CLAUDIA BURKE
Assistant Director

/s/ Borislav Kushnir
BORISLAV KUSHNIR
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 307-5928
Facsimile: (202) 353-0461
Email: Steven.Kushnir@usdoj.gov

May 19, 2020                    Attorneys for Respondent

## CERTIFICATE OF COMPLIANCE

This response complies with the typeface and type-style limitations of Fed.

R. App. P. 27(d)(1)(E), 32(a)(5), and 32(a)(6), because it was prepared in a

proportionally spaced typeface, 14 point Times New Roman font, using Microsoft

Word.  This motion also complies with the length limitations of Fed. R. App. P.

27(d)(2) because it contains 858 words.


/s/ Borislav Kushnir

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of May, 2020, a copy of the foregoing "RESPONDENT'S RESPONSE TO ORDER TO SHOW CAUSE" was filed electronically.  A copy of this filing was served via email and First Class Mail on petitioner at the following address:


      Delta Danielle Harris
      405 Autumn Terrace
      Sebastian, FL 32958
      Email: deltaharris7@gmail.com


                /s/ Borislav Kushnir

**DELTA DANIELLE HARRIS,**

*Petitioner*

.

**DEPARTMENT OF THE INTERIOR,**

*Respondent*

**Federal Circuit Docket No.:** 20-1522

May 22, 2020

## <u>Petitioner s Res onse to A enc s Res onse to S o Cause</u>

The Petitioner, Delta Danielle Harris, respectfully requests the Court of Appeals not dismiss the case and transfer case to the District Court.

### <u>CA SE</u>

On April , 2020, the Petitioner filed a motion with the Court of Appeals requesting to supplement vital evidence to add to the record due to the Agency s lack to supply the Merit Systems Protection Board Board) all sustainable evidence to the wrongful termination. As of today, Petitioner has heard no response to her motion request.

The Agency failed to present to the Board, the Petitioner s initial April 201 EEOC complaint for wrongful termination involving discrimination. The evidence consisted of the EEOC Administrative Record filed by the Petitioner in 201 .

The Agency had the responsibility to provide the evidence to the Board but failed to do so.

This vital substantial evidence was lacking from the Board s review included the Report of Investigation ROI) and the Agency s Final Decision FAD).

.

The Board was misled by the Agency.  The facts were not properly presented.  Based on the failure of the Agency to present the facts, the Board did not consider substantial evidence.

## CA SE

On May 1 , 2020, the Agency submitted a pleading titled:  *RESPONDENT'S RESPONSE TO ORDER TO SHOW CAUSE.*

The 2017 EEOC formal complaint of discrimination are different from the discrimination being alleged regarding Petitioner s removal in 201 . The case should accordingly proceed to district court.

The Agency claims that your discrimination claims are already pending before the EEOC, which is not true.  The case before currently under review by the EEOC is a formal compliant made in 2017 prior to the Petitioner s wrongful termination.

Below in an excerpt from the November 1 , 201  MSPB Initial Decision, p 31-32



Therefore, the case is not permissible to be dismissed and should be moved to the district court.

Respectfully requested,

Delta Harris

# Certificate of Service

I certify that this Motion was sent via email, on May 22, 2020, to the following recipients:

U.S. Court of Appeals of the Federal Circuit

prose   cafc.uscourts.gov

United States Department of  ustice, Commercial Litigation Branch

Steven   ushnir

Steven.  ushnir  usdoj.gov